1
2
3
4

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

5

*Attorney for Plaintiff*

6

*[Additional Counsel on Signature Page]*

7

8
9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

10
11

DENISE MARECHAL, Individually and On
Behalf of All Others Similarly Situated,

Case No. __'21 CV0762 WQHNLS__

12

Plaintiff,

13

v.

CLASS ACTION

14

ACADIA PHARMACEUTICALS INC.,
STEPHEN R. DAVIS, and ELENA H.
RIDLOFF,

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

15
16

DEMAND FOR JURY TRIAL

17

Defendants.

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Denise Marechal ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Acadia Pharmaceuticals Inc. ("Acadia" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

1

Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Acadia securities between June 15, 2020 and April 4, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Acadia is a biopharmaceutical company that focuses on the development and commercialization of small molecule drugs that address unmet medical needs in central nervous system disorders.  The Company is developing pimavanserin as a treatment for dementia-related psychosis and as an adjunctive treatment for schizophrenia, as well as an adjunctive treatment for major depressive disorder.

3.      In April 2016, the U.S. Food and Drug Administration ("FDA") approved pimavanserin for the treatment of hallucinations and delusions associated with Parkinson's disease psychosis.

4.      In June 2020, Acadia submitted a supplemental New Drug Application ("sNDA") with the FDA to expand pimavanserin's label to include treatment for dementia-related psychosis (the "pimavanserin sNDA").

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the materials submitted in support of the pimavanserin sNDA contained statistical and design deficiencies; (ii)

2

accordingly, the pimavanserin sNDA lacked the evidentiary support that the Company had led investors to believe it possessed; (iii) the FDA was unlikely to approve the pimavanserin sNDA in its present form; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On March 8, 2021, post-market, Acadia issued a press release providing a regulatory update on the pimavanserin sNDA, disclosing "that the Company received a notification from the [FDA] on March 3, 2021, stating that, as part of its ongoing review of the Company's [sNDA], the FDA has identified deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time." Acadia advised that "[t]he notification does not specify the deficiencies identified by the FDA and there has been no clarification by the FDA at this time."

7.     On this news, Acadia's stock price fell $20.76 per share, or 45.35%, to close at $25.02 per share on March 9, 2021.

8.     Then, on April 5, 2021, pre-market, Acadia issued a press release announcing that the Company had received a Complete Response Letter ("CRL") from the FDA indicating that the pimavanserin sNDA could not be approved in its current form. Specifically, the press release stated that, "the [FDA Division of Psychiatry], in the CRL, cited a lack of statistical significance in some of the subgroups of dementia, and insufficient numbers of patients with certain less common dementia subtypes as lack of substantial evidence of effectiveness to support approval."

9.     On this news, Acadia's stock price fell $4.41 per share, or 17.23%, to close at $21.18 per share on April 5, 2021.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Acadia is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Acadia securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Acadia is a Delaware corporation with principal executive offices located at 12830 El Camino Real, Suite 400, San Diego, California 92130.  The Company's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "ACAD."

17.     Defendant Stephen R. Davis ("Davis") has served as Acadia's Chief Executive Officer at all relevant times.

4

18.     Defendant Elena H. Ridloff ("Ridloff") has served as Acadia's Executive Vice President and Chief Financial Officer at all relevant times.

19.     Defendants Davis and Ridloff are sometimes referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Acadia's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Acadia's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Acadia, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Acadia is a biopharmaceutical company that focuses on the development and commercialization of small molecule drugs that address unmet medical needs in central nervous system disorders.  The Company is developing pimavanserin as a treatment for dementia-related psychosis and as an adjunctive treatment for schizophrenia, as well as an adjunctive treatment for major depressive disorder.

22.     In April 2016, the FDA approved pimavanserin for the treatment of hallucinations and delusions associated with Parkinson's disease psychosis.

**Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on June 15, 2020, when, pre-market, Acadia issued a press release announcing the submission of the pimavanserin sNDA, stating, in relevant part:

SAN DIEGO--(BUSINESS WIRE)--ACADIA Pharmaceuticals Inc. (Nasdaq: ACAD) announced today that the company submitted a [sNDA] to the [FDA] to support a potential new indication for NUPLAZID® (pimavanserin) for the treatment of hallucinations and delusions associated with dementia-related psychosis (DRP). The FDA previously granted Breakthrough Therapy Designation for pimavanserin for the treatment of hallucinations and delusions associated with DRP.

"This is an important step forward for the approximately 2.4 million people in the U.S. who suffer from dementia-related hallucinations and delusions, representing a large unmet need with currently no approved treatment options," said Steve Davis, ACADIA's Chief Executive Officer. "Our pivotal HARMONY study showed a meaningful reduction of the symptoms and stabilization of psychosis and a nearly three-fold reduction in the risk of relapse of psychosis for patients continuing treatment on pimavanserin compared to placebo. We look forward to working with the FDA as it reviews our submission."

The sNDA is supported by results from the pivotal Phase 3 HARMONY study, which met its primary endpoint, demonstrating that pimavanserin significantly reduced the risk of relapse of psychosis by 2.8 fold compared to placebo (hazard ratio = 0.353; one-sided p=0.0023). The sNDA also includes positive efficacy results from two additional placebo-controlled studies, both of which met their respective primary endpoints: The Phase 2 (-019) study in patients with Alzheimer's disease psychosis and the Phase 3 (-020) study in patients with Parkinson's disease psychosis. The sNDA includes a large safety and tolerability database from completed and ongoing studies representing over 1500 patients with neurodegenerative disease.

24.     On July 20, 2020, Acadia issued a press release announcing that the FDA had accepted the pimavanserin sNDA for filing.  The press release stated, in relevant part:

"We are pleased that the FDA has accepted our sNDA for filing and we will be working closely with the FDA to facilitate completion of the review in a timely manner," said Steve Davis, ACADIA's Chief Executive Officer. "If approved, NUPLAZID would be the first therapy indicated for the treatment of hallucinations and delusions associated with dementia-related psychosis. We look forward to potentially bringing this important treatment advancement to patients, caregivers and physicians."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25.     On August 5, 2020, Acadia issued a press release announcing the Company's second quarter 2020 financial results.  The press release stated, in relevant part:

"In the first half of 2020 we drove robust growth of NUPLAZID®. With the FDA filing of our sNDA for dementia-related psychosis we are one step closer to potentially delivering the first and only approved treatment for this devastating condition," said Steve Davis, ACADIA's Chief Executive Officer. "Building upon the successful development of our PDP and DRP programs, our clinical team is focused on advancing our innovative early- and late-stage pipeline."

26.     That same day, Acadia hosted an earnings call with investors and analysts to discuss the Company's second quarter 2020 results (the "2Q20 Earnings Call").  During the scripted portion of the 2Q20 Earnings Call, Defendant Davis stated, in relevant part:

We've made important and significant progress on our 3 strategic pillars. As a reminder, this year, we are focused on driving the growth of NUPLAZID for patients with Parkinson's disease psychosis; delivering on the dementia-related psychosis opportunity, our second indication for NUPLAZID; and developing innovative new treatments for unmet needs in CNS with 3 candidates in our early and late-stage development pipeline.

* * *

Our supplemental NDA for dementia-related psychosis was accepted for filing by the FDA with the PDUFA date of April 3, 2021. The filing of the application is an important next step as DRP is a devastating and highly disruptive disease and represents a significant unmet need, not only for the patients but also for their caregivers and family members. We are highly confident in both the efficacy and safety data supporting our submission and look forward to continuing to work with the FDA to facilitate their review.

27.     On August 6, 2020, Acadia filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q").  The 2Q20 10-Q touted the pimavanserin sNDA, stating, in relevant part:

[W]e believe dementia-related psychosis (DRP), represents one of our most important opportunities for further exploration. In June 2020, we submitted a [sNDA] for NUPLAZID for the treatment of hallucinations and delusions associated with DRP. In July 2020 the FDA notified us of acceptance of our sNDA with a PDUFA date of April 3, 2021. The FDA advised us that it has not identified any potential review issues at this point in their evaluation and at this time they are not planning to hold an Advisory Committee meeting. The sNDA is supported by results from the pivotal Phase 3 HARMONY study, which met its primary

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

endpoint, demonstrating that pimavanserin significantly reduced the risk of relapse of psychosis by 2.8 fold compared to placebo (hazard ratio = 0.353; one-sided p=0.0023). The sNDA also includes positive efficacy results from two additional placebo-controlled studies, both of which met their respective primary endpoints: the Phase 2 (-019) study in patients with Alzheimer's disease psychosis and the Phase 3 (-020) study in patients with Parkinson's disease psychosis. The sNDA includes a large safety database from completed and ongoing studies representing over 1,500 patients with neurodegenerative disease. An estimated 8.0 million people in the United States are living with dementia, and studies suggest that approximately 30% of dementia patients, or 2.4 million people, have psychosis, commonly consisting of delusions and hallucinations. Approximately 1.2 million patients in the United States are currently treated for DRP and, of those treated, approximately two-thirds are treated with off-label anti-psychotics. In the fourth quarter of 2017, the FDA granted Breakthrough Therapy Designation for pimavanserin for the treatment of DRP.

28.     Appended to the 2Q20 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that, "the information contained in [the 2Q20 10-Q] fairly presents, in all material respects, the financial condition of the Company at the end of the period covered by the Report and results of operations of the Company for the period covered by [the 2Q20 10-Q]."

29.     On November 4, 2020, Acadia filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q").  The 3Q20 10-Q contained substantively the same statements as referenced in ¶ 27, *supra*, touting the pimavanserin sNDA.

30.     Appended to the 3Q20 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that, "the information contained in [the 3Q20 10-Q] fairly presents, in all material respects, the financial condition of the Company at the end of the period covered by the Report and results of operations of the Company for the period covered by [the 3Q20 10-Q]."

31.     Corresponding with the 3Q20 10-Q, Acadia issued a press release announcing the Company's third quarter 2020 financial results.  The press release stated, in relevant part:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

"This quarter we drove strong performance through the continued growth of new prescribers with more patients benefitting from NUPLAZID® treatment for their Parkinson's disease psychosis and remain on-track with our supplemental NDA for the treatment of dementia-related psychosis with a PDUFA date of April 3, 2021," said Steve Davis, Acadia's Chief Executive Officer. "We continue to advance our late-stage programs and invest in new opportunities through business development, highlighted by our recent acquisition of CerSci Therapeutics which expands our clinical pipeline with an innovative first-in-class, non-opioid, acute and chronic pain program."

32.     That same day, Acadia hosted an earnings call with investors and analysts to discuss the Company's third quarter 2020 results (the "3Q20 Earnings Call").  During the scripted portion of the 3Q20 Earnings Call, Defendant Davis stated, in relevant part:

We are well-prepared to achieve the long-term market opportunity for NUPLAZID in PDP and look forward to the addition of the DRP indication.

* * *

We are excited that pimavanserin could be the first and only FDA approved medicine for the treatment of Dementia-related psychosis.

* * *

We are confident in both the efficacy and safety data supporting our supplemental NDA and we will continue to work with the FDA to facilitate their review with a PDUFA date of April 3, 2021.

We continue to make important progress in our late stage development pipeline as shown on slide eight, with but ongoing Phase 3 studies with pimavanserin for the treatment of negative symptoms of schizophrenia and with trofinetide for the treartment of Rett Syndrome.

33.     On February 24, 2021, Acadia issued a press release announcing the Company's fourth quarter and full year 2020 financial results.  The press release stated, in relevant part:

"Acadia delivered strong financial results in the fourth quarter and full year 2020, driven by robust sales of NUPLAZID in Parkinson's disease psychosis. Additionally, we made significant advancements in two Phase 3 programs and further expanded our pipeline in pain and neuropsychiatry through strategic business development," said Steve Davis, Chief Executive Officer. "In 2021, we are focused on delivering continued growth of NUPLAZID, the upcoming potential approval and launch of pimavanserin for dementia-related psychosis and advancing our business development strategy."

9

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

34.     That same day, Acadia hosted an earnings call with investors and analysts to discuss the Company's fourth quarter and full year 2020 results (the "4Q20 Earnings Call").  During the scripted portion of the 4Q20 Earnings Call, Defendant Davis stated, in relevant part:

> Additional highlights from 2020 include our submission of an sNDA for DRP. The FDA review is progressing as expected, and we look forward to the potential NUPLAZID becoming the first and only approved treatment for this indication, and the first new treatment in the dementia space in over 15 years.
>
> *  *  *
>
> The significant potential of pimavanserin, combined with our clinical pipeline, will drive meaningful long-term growth. We continue to grow NUPLAZID sales, and based on our 2020 performance and current outlook, we're providing net sales guidance for PDP in fiscal year 2021 of $510 million to $550 million.
>
> We're on the cusp of a potential approval in DRP, a significantly larger market opportunity for which our teams have been preparing for approximately two years. We will be ready to execute on Day 1. In addition, we're advancing our pipeline with clinical trials across five separate indications.

35.     On February 25, 2021, Acadia filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K stated, in relevant part:

> [W]e believe dementia-related psychosis (DRP), represents one of our most important opportunities for further development.  In June 2020, we submitted to the FDA a supplemental New Drug Application (sNDA) for NUPLAZID for the treatment of hallucinations and delusions associated with DRP. In July 2020 the FDA notified us of their filing of our sNDA with a Prescription Drug User Fee Act (PDUFA) target action date of April 3, 2021.

36.     In addition, in a section discussing company strategy, the 2020 10-K stated, in relevant part:

> Our strategy is to identify, develop and commercialize innovative therapies that address unmet medical needs in CNS disorders. Key elements of our strategy are to:
>
> *  *  *
>
> *   ***Deliver pimavanserin to the market for the treatment of patients with dementia-related psychosis***. In June 2020, we submitted an sNDA for

10

NUPLAZID for the treatment of hallucinations and delusions associated with DRP. Our PDUFA target action date is April 3, 2021. In preparation for a potential U.S. launch, we plan to increase the U.S. sales force, including expansion of additional commercial, medical affairs and general and administrative support functions prior to obtaining regulatory approval for NUPLAZID in DRP. If approved, NUPLAZID will be the first and only FDA-approved treatment for DRP.

37.     Appended to the 2020 10-K as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that, "the information contained in [the 2020 10-K] fairly presents, in all material respects, the financial condition of the Company at the end of the period covered by the Report and results of operations of the Company for the period covered by [the 2020 10-K]."

38.     The statements referenced in ¶¶ 23-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the materials submitted in support of the pimavanserin sNDA contained statistical and design deficiencies; (ii) accordingly, the pimavanserin sNDA lacked the evidentiary support that the Company had led investors to believe it possessed; (iii) the FDA was unlikely to approve the pimavanserin sNDA in its present form; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

39.     On March 8, 2021, post-market, Acadia issued a press release providing a regulatory update on the pimavanserin sNDA, disclosing "that the Company received a notification from the [FDA] on March 3, 2021, stating that, as part of its ongoing review of the Company's [sNDA], the FDA has identified deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time."  Acadia advised that "[t]he notification does

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

not specify the deficiencies identified by the FDA and there has been no clarification by the FDA

at this time."

40.     On this news, Acadia's stock price fell $20.76 per share, or 45.35%, to close at

$25.02 per share on March 9, 2021.

### The Truth Fully Emerges

41.     Then, on April 5, 2021, pre-market, Acadia issued a press release announcing that

the Company had received a CRL from the FDA indicating that the pimavanserin sNDA could not

be approved in its current form.  Specifically, the press release stated, in relevant part:

> Despite prior agreements with the Division of Psychiatry regarding the pivotal Phase 3 HARMONY study design targeting a broad DRP patient population analyzed as a single group, the Division, in the CRL, cited a lack of statistical significance in some of the subgroups of dementia, and insufficient numbers of patients with certain less common dementia subtypes as lack of substantial evidence of effectiveness to support approval.

> The DRP pivotal HARMONY study met its prespecified primary and secondary endpoints with robust and persuasive clinical and statistical superiority of pimavanserin over placebo, which was a prospectively agreed prerequisite for the DRP indication. Statistical separation by dementia subgroups and certain minimum numbers of patients with specific subtypes were not among the prespecified requirements.

> "Acadia stands behind the robustly positive results from the pivotal Phase 3 HARMONY study and the prospectively agreed trial design and criteria for establishing efficacy in DRP. Over the entire course of the review, the Division did not raise any concerns regarding the agreed upon study design, including the issues raised in the CRL," said Steve Davis, Chief Executive Officer of Acadia. "We will immediately request a Type A meeting to work with the FDA to address the CRL and determine an expeditious path forward for the approval of pimavanserin in DRP."

> The Division also stated in the CRL that it considers the Phase 2 Alzheimer's disease psychosis study -019, a supportive study in the sNDA filing, to not be adequate and well controlled, citing that it was a single center study with no type I error control of secondary endpoints in which certain protocol deviations occurred. The Company believes these observations impact neither the positive results on the study's primary endpoint, nor the study's overall conclusions of efficacy.

> There were no safety issues or concerns raised in the CRL.

42.     On this news, Acadia's stock price fell $4.41 per share, or 17.23%, to close at $21.18 per share on April 5, 2021.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Acadia securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Acadia securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Acadia or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Acadia;

- whether the Individual Defendants caused Acadia to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Acadia securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

14

- the omissions and misrepresentations were material;

- Acadia securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Acadia securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

53.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Acadia securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Acadia securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Acadia securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Acadia's finances and business prospects.

57.     By virtue of their positions at Acadia, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Acadia, the Individual Defendants had knowledge of the details of Acadia's internal affairs.

59.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Acadia.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Acadia's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Acadia securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Acadia's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Acadia securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.     During the Class Period, Acadia securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Acadia securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Acadia securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Acadia securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

63. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. During the Class Period, the Individual Defendants participated in the operation and management of Acadia, and conducted and participated, directly and indirectly, in the conduct of Acadia's business affairs. Because of their senior positions, they knew the adverse non-public information about Acadia's misstatement of income and expenses and false financial statements.

65. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Acadia's

financial condition and results of operations, and to correct promptly any public statements issued by Acadia which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Acadia disseminated in the marketplace during the Class Period concerning Acadia's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Acadia to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Acadia within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Acadia securities.

67.     Each of the Individual Defendants, therefore, acted as a controlling person of Acadia.  By reason of their senior management positions and/or being directors of Acadia, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Acadia to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Acadia and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Acadia.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  April 19, 2021                              Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
Thomas H. Przybylowski
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

peretz@bgandg.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Thursday, April 15, 2021

# Acadia (ACAD)

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Acadia Pharmaceuticals Inc. ("Acadia" or the "Company") and authorize the filing of a motion on my behalf for appointment as lead plaintiff.

3.  I did not purchase or acquire Acadia securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Acadia securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in Acadia securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

**Name**

**Print Name**
Denise Marechal

**Signature**

**Acadia Pharmaceuticals Inc. (ACAD)**                                    **Marechal, Denise**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 1/19/2021 | 486 | $53.3100 |