COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
4401 Eastgate Mall
San Diego, California 92121-1909
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550-6420

Attorneys for Defendants
Acadia Pharmaceuticals, Inc., Stephen R.
Davis, and Srdjan (Serge) R. Stankovic

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM AND OHIO CARPENTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and SRDJAN (SERGE) R. STANKOVIC, <br><br> Defendants. | Case No. 3:21-CV-00762-WQH-NLS <br><br> CLASS ACTION <br><br> **REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE AND FOR INCORPORATION BY REFERENCE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> Date: June 9, 2022 <br> Courtroom: 14B <br> Judge: Hon. William Q. Hayes <br><br> **Oral Argument Requested** <br><br> **Demand for Jury Trial** |

## I.  INTRODUCTION

Plaintiffs oppose Defendants' Request for Judicial Notice and for Incorporation by Reference, arguing that the Court cannot judicially notice Exhibits A, B, C, F, K, L, N, O, S, U, V, Y AA, and DD[1] because Defendants cite all of those exhibits "as factual support for [their] self-serving characterizations of their own conduct."  ("RJN Opp.," Dkt. 57, at 4–5.)  But Plaintiffs conspicuously fail to describe which facts they contend Defendants are improperly attempting to introduce via these exhibits.  Instead, they broadly assert that the exhibits are not incorporated by reference and/or cannot be considered for the truth of the information contained in them.  Effectively, Plaintiffs ask the Court to ignore documents in the **public record** that give crucial context to the very statements Plaintiffs contend are false and misleading.  It is well-established in securities-fraud cases that the doctrines of judicial notice and incorporation by reference are appropriately used to show what information was available to market participants at a particular time, and to place allegedly false statements in context.  *See In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023–24 (C.D. Cal. 2008).  That is precisely what Defendants endeavor to do here.  Accordingly, Defendants respectfully request that the Court grant their Request for Judicial Notice (the "RJN," Dkt. 53-5).

## II.  ARGUMENT

### A.  Exhibits A, B, C, F, K, L, N, O, S, U, V, Y AA, and DD Are Subject to Judicial Notice

#### 1.  Analyst Reports: Exhibits U, V, and Y

Plaintiffs argue that the Court should not take notice of Exhibits U, V, and Y—all analyst reports discussing Acadia—because "they were not incorporated by reference into the CAC" and because Defendants "try to use them as factual support"

[1] "Ex. _" refers to the exhibits to the Declaration of Peter M. Adams (the "Adams Declaration," Dkt. 51-1).  Citations to "¶ _" are to the Amended Class Action Complaint for Violations of the Federal Securities Laws ("CAC").  (Dkt. 45.) Citations and quotation marks are omitted, and emphasis added, unless otherwise noted.

in rebutting Plaintiffs' claims. (RJN Opp. at 1, 4–5.) It is true, of course, that judicial notice does not always extend to the truth of a document's contents. Defendants expressly acknowledged as much in their RJN. (RJN at 7:1–2.) But these analyst reports are nevertheless subject to judicial notice and/or incorporation by reference for two reasons.

*First*, Plaintiffs aver that the CAC is "based upon . . . analysts' reports and advisories about [Acadia] and the industry in which it operates" (CAC at 1) and the CAC quotes extensively from colloquies between analysts and Defendants during Acadia's quarterly earnings calls (*e.g.*, ¶¶ 111, 113, 115, 117, 125, 128, 132, 135.) Having pleaded that the CAC's claims are based on analyst reports, Plaintiffs cannot now complain about Defendants asking the Court to consider analyst reports as necessary context for Plaintiffs' claims. *See, e.g.*, *Par Inv. Partners, L.P. v. Aruba Networks, Inc.*, 681 Fed. Appx. 618, 620 (9th Cir. 2017) (taking judicial notice of "multiple public analyst reports," despite the plaintiffs not citing those reports, for the "purpose of determining what information was disclosed to the public during the class period"). And courts may take judicial notice of documents that "create factual disputes with a plaintiff's conclusory allegations." *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

*Second*, Defendants do not cite these analyst reports for the truth of the matters asserted in them. Rather, the Court should take judicial notice of the reports because they reflect the information about Acadia that was publicly available to the market. This is the paradigmatic use of judicial notice in securities fraud cases. *See In re Amgen*, 544 F. Supp. 2d at 1023–24. For example, Defendants cite Exhibits U and V to show that analysts (as a proxy for the market) were aware of—and advised Acadia's investors about—the FDA's decision to conduct a standard review for Acadia's sNDA rather than the previously anticipated priority review. (Dkt. 53-1 at

8 (citing Ex. U at 118 and Ex. V at 120).) Defendants also cite Exhibit V to show that analysts recommended that Acadia investors "consider trading strategies to hedge against the potential near-term downside risk" of a possible 50% share price decline if the FDA rejected Acadia's sNDA. (Dkt. 53-1 at 8 (citing Ex. V at 120).) These reports are not offered to show that analysts honestly believed that a "downside risk" to Acadia's stock price existed at the time. Instead, they are properly offered to show that the market was *aware* of the risk that the FDA might ultimately reject Acadia's then-pending sNDA.

Likewise, with respect to Exhibit Y, Defendants do not ask the Court to take judicial notice of the truth of the analyst's opinions that "we still think DRP can work" or that the magnitude of Acadia's stock-price decline "makes no sense." (*See* Dkt. 53-1 at 9 (citing Ex. Y at 129).) Rather, Exhibit Y is made judicially noticeable by the CAC's loss-causation theory (*see* ¶ 164 ("The market price of Acadia common stock declined sharply *upon public disclosure of the facts alleged herein* to the injury of Plaintiff and Class members.")), as clarified in Plaintiffs' Opposition to Defendants' Motion to Dismiss:

> [T]he March and April disclosures were plainly ***construed by shocked investors*** as evidence that (i) ***Defendants' prior assurances*** that the FDA had prospectively agreed on HARMONY's trial design ***were likely false***, (ii) their repeated characterizations of the sNDA's supporting efficacy data as "robust and meaningful" were at best materially misleading, and (iii) Defendants had, accordingly, similarly misled investors as to the true magnitude of the risk that the sNDA would be rejected.

(Dkt. 56 at 25.) In other words, Exhibit Y is offered only to show that market participants reacted to the FDA's denial of Acadia's sNDA in ways that contradict the allegations of the CAC. *See Sprewell*, 266 F.3d at 988.

### 2. Press Releases, Presentations, and Articles: Exhibits A, B, C, F, L, N, O, and AA

Courts may, and frequently do, take judicial notice of "publicly available articles or other news releases of which the market was aware." *Welgus v. TriNet*

*Grp., Inc.*, 2017 WL 6466264, at *5 (N.D. Cal. Dec. 18, 2017). *See also Jui-Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *10 (N.D. Cal. Apr. 27, 2017) (press releases); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (news articles); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 979–80 (N.D. Cal. 2010) (news articles and presentations).

Exhibits A, B, F, N, and AA are press releases of the type cited extensively in the CAC to substantiate Plaintiffs' claims, and are cited by Defendants not for the truth of the matters discussed therein but to establish that the market was informed of those matters.

Exhibit O is a corporate presentation cited by Defendants, **not** to prove that all of the information contained in the presentation was, in fact, true, but to demonstrate that investors were informed about HARMONY's primary and secondary endpoints and that Acadia had presented data from that study. (Dkt. 53-1 at 7, 16 (citing Ex. O at 73).)

Exhibit C is likewise cited by Defendants, not to prove that the FDA approval rate for new drugs is actually 14 percent, but to demonstrate that the market was aware of studies claiming that drug testing is inherently uncertain. (Dkt. 53-1 at 4 (citing Ex. C at 10).)

And Exhibit L, an article on breakthrough therapy designation published by the FDA, **can** be used to establish facts because it is "not subject to reasonable dispute [since it] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Courts in this Circuit routinely take judicial notice of the contents of FDA publications. (*See* RJN at 7 (collecting authority).)

### 3.   SEC Filings: Exhibits K and S

Plaintiffs do not explain why they specifically challenge Exhibits K and S, which are Acadia's Forms 10-K for 2018 and 2019, respectively. In fact, courts routinely take judicial notice of "publicly available financial documents such as SEC

filings." *Welgus*, 2017 WL 6466264, at *5; *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (courts may consider "any matter subject to judicial notice, such as SEC filings" on a motion to dismiss). So too here. Defendants offer both exhibits to demonstrate that the market was aware of information contained therein, not to prove the truth of the information. Exhibit K contains Acadia's risk warnings about the limited nature of its past clinical studies and that the Company did not know whether future studies with larger numbers of patients from broader populations would be consistent with past results. (*See* Dkt. 53-1 at 5 (citing Ex. K at 55).) It is ***not*** offered to prove that Defendants actually knew that future clinical study results would differ from those of past studies. Likewise, Defendants cite Exhibit S only to show that Acadia warned investors that pimavanserin might not ultimately be approved by the FDA as a broad treatment for dementia related psychoses even if the FDA accepted the Company's sNDA (Dkt. 53-1 at 8 (citing Ex. S at 111)).

## III.   CONCLUSION

This Court can and should consider information from these publicly available documents in order to evaluate Plaintiffs' claims in context. Accordingly, Defendants' RJN should be granted.

Dated:        June 2, 2022                    COOLEY LLP

By: */s/ Peter M. Adams*
Peter M. Adams

Attorneys for Defendants Acadia Pharmaceuticals, Inc., Stephen R. Davis, and Srdjan (Serge) R. Stankovic

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5