COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
MATTHEW D. MARTINEZ (333932)
10265 Science Center Drive
San Diego, California 92121
Telephone:   (858) 550-6000
Facsimile:   (858) 550-6420

Attorneys for Defendants
Acadia Pharmaceuticals, Inc., Stephen R.
Davis, and Srdjan (Serge) R. Stankovic

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM AND OHIO CARPENTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and SRDJAN (SERGE) R. STANKOVIC,<br><br>Defendants. | Case No. 3:21-CV-00762-WQH-NLS<br><br>CLASS ACTION<br><br>**ANSWER TO PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**Demand for Jury Trial** |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

Defendant Acadia Pharmaceuticals, Inc. ("Acadia") and individual defendants Stephen R. Davis and Srdjan (Serge) R. Stankovic (the "Individual Defendants" and collectively with Acadia, "Defendants"), by and through their counsel, hereby answer Lead Plaintiff City of Birmingham Relief and Retirement System ("Birmingham") and additional Plaintiff Ohio Carpenters' Pension Fund ("Ohio Carpenters") (collectively, "Plaintiffs"), Amended Class Action Complaint for Violations of the Federal Securities Laws ("FAC").

To the extent that the paragraphs in the FAC are grouped under headings and subheadings, Defendants respond generally that the headings and subheadings do not constitute factual averments, and thus the headings are not included herein. To the extent that a response is deemed necessary, Defendants deny any and all allegations in each and every heading and subheading in the FAC.

Except as explicitly admitted herein, Defendants deny each and every allegation in the FAC, including, without limitation, headings, subheadings, footnotes, and the prayer for relief. Defendants further answer the numbered paragraphs in the FAC as follows.

## **ANSWER**

1. In response to paragraph 1[1], Defendants admit that Plaintiffs assert claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5. Defendants deny that this action can be maintained as a class action under Federal Rules of Civil Procedure 23. Defendants deny that Plaintiffs have suffered any damages based on the allegations in the FAC. Except as expressly admitted herein, Defendants deny the allegations in paragraph 1.

2. In response to paragraph 2, Defendants admit that Acadia is a biopharmaceutical company focused on the development and commercialization of innovative medicines that address unmet medical needs in central nervous system

---

[1] All references to paragraphs are references to paragraphs in the FAC.

Cooley LLP
Attorneys at Law
San Diego

1

disorders. Defendants also admit that pimavanserin is currently Acadia's lead asset. Defendants also admit that Acadia sought FDA approval of pimavanserin as a treatment for Dementia-Related Psychosis ("DRP"). Defendants also admit that DRP occurs in patients with a variety of different types of dementia, including Alzheimer's disease ("ADP"), dementia with Lewy bodies ("DLB"), vascular dementia ("VaD"), frontotemporal dementia ("FTD"), and PDP. Defendants also admit that pimavanserin was approved by the U.S. Food and Drug Administration ("FDA") in April 2016 to treat hallucinations and delusions associated with psychosis caused by Parkinson's disease ("PDP'). Except as expressly admitted herein, Defendants deny the allegations in paragraph 2.

3.     In response to paragraph 3, Defendants admit that Acadia filed a supplemental New Drug Application ("sNDA") for NUPLAZID® (pimavanserin) for the Treatment of Hallucinations and Delusions Associated with Dementia-Related Psychosis. Defendants also admit that in September 2017, Acadia initiated HARMONY, a Phase 3, randomized, double-blind, placebo-controlled relapse prevention study, evaluating the efficacy and safety of pimavanserin for the treatment of hallucinations and delusions associated with dementia-related psychosis (DRP), including a subgroup of ADP patients. Except as expressly admitted herein, Defendants deny the allegations in paragraph 3.

4.     In response to paragraph 4, Defendants admit that Acadia made public statements on September 9, 2019. To the extent that paragraph 4 purports to quote, summarize, or characterize the statements made on September 9, 2019, Defendants refer Plaintiffs to the contents of those statements, which speak for themselves and are the best evidence of their contents.  To the extent that the allegations in paragraph 4 differ in any way from the contents of those statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 4.

5.      In response to paragraph 5, Defendants admit that Acadia conducted public investor conference calls on September 9, 2019, and February 26, 2020, during which Dr. Stankovic made certain statements. To the extent that paragraph 5 purports to quote, summarize, or characterize the statements made during those conference calls, Defendants refer Plaintiffs to the transcripts of those calls, which speak for themselves and are the best evidence of their contents.  To the extent the allegations in paragraph 5 differ in any way from the contents of those conference calls, Defendants deny the allegations.  The remainder of paragraph 5 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 5.

6.      In response to paragraph 6, Defendants admit that the price of Acadia's stock price closed at $38.85 per share on September 9, 2019. Except as expressly admitted herein, Defendants deny the allegations in paragraph 6.

7.      Paragraph 7 contains Plaintiffs' argument and/or legal conclusions to which no response is required; to the extent a response is required, Defendants deny each and every allegation therein.

8.      Paragraph 8 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 8.

9.      In response to paragraph 9, Defendants admit that Acadia issued a press release on March 8, 2021, and that Acadia's stock price closed at $25.02 per share on March 9, 2021. To the extent that paragraph 9 purports to quote, summarize, or characterize the March 8, 2021 press release, Defendants refer Plaintiffs to the contents of that disclosure. To the extent the allegations in paragraph 9 differ in any way from the contents of the press release, Defendants deny the allegations.  Except as expressly admitted herein, Defendants deny the allegations in paragraph 9.

10.    In response to paragraph 10, Defendants admit that Acadia issued a press release on April 5, 2021. To the extent that paragraph 10 purports to quote, summarize, or characterize the press release, Defendants refer Plaintiffs to the contents of the press release.  To the extent that the allegations in paragraph 10 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 10.

11.    In response to paragraph 11, Defendants admit that Acadia's stock price closed at $21.18 per share on April 5, 2021. Except as expressly admitted herein, Defendants deny the allegations in paragraph 11.

12.    Paragraph 12 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 12.

13.    In response to paragraph 13, Defendants admit that on September 18, 2019, Acadia filed a Prospectus supplement on Form 424B5 for the sale of 6,250,000 shares of Acadia common stock at a price of $40.00 per share.  Defendants also admit that between October 9, 2019, and May 14, 2020, Mr. Davis filed twelve Forms 4 for the sale of 500,000 shares of Acadia stock at prices ranging from $40.001 and $52.82 per share, all of which were made pursuant to Rule 10b5-1 plans or to cover taxes on the vesting of Restricted Stock Units. Defendants also admit that between April 20, 2020, and January 12, 2021, Dr. Stankovic filed eight Forms 4 for the sale of 347,315 shares of Acadia stock at prices ranging from $50.0088 and $55.2192 per share, all of which were made pursuant to Rule 10b5-1 plans or to cover taxes on the vesting of Restricted Stock Units. The remainder of paragraph 13 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 13.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

14.    Paragraph 14 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants refer Plaintiffs to Acadia's publicly disclosed stock prices . Except as expressly admitted herein, Defendants deny the allegations in paragraph 14.

15.    Paragraph 15 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 15.

16.    In response to paragraph 16, Defendants admit that Plaintiffs assert claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.  Except as expressly admitted herein, Defendants deny the allegations in paragraph 16.

17.    Defendants admit the allegations in paragraph 17.

18.    In response to paragraph 18, Defendants admit that venue is proper in this district and that Acadia is headquartered and conducts business in this district. Except as expressly admitted herein, Defendants deny the allegations in paragraph 18.

19.    In response to paragraph 19, Defendants admit that shares of Acadia's common stock traded under the symbol "ACAD" on the Nasdaq Global Select Market ("NASDAQ") during the purported Class Period. Except as expressly admitted herein, Defendants deny the allegations in paragraph 19.

20.    In response to paragraph 20, Defendants deny that Acadia's common stock was artificially inflated during the purported Class Period and that Plaintiff Birmingham suffered any damages. As to the remainder of the allegations in paragraph 20, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them.

21.    In response to paragraph 21, Defendants deny that Acadia's common stock was artificially inflated during the purported Class Period and that Plaintiff

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

Ohio Carpenters suffered any damages. As to the remainder of the allegations in paragraph 21, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them.

22. In response to paragraph 22, Defendants admit that Acadia was originally incorporated in Vermont and reincorporated in Delaware. Defendants also admit that Acadia's headquarters are located at 12830 El Camino Real, Suite 400, San Diego, California 92130. Defendants also admit that Acadia common stock trades on NASDAQ under the symbol "ACAD." Except as expressly admitted herein, Defendants deny the allegations in paragraph 22.

23. In response to paragraph 23, Defendants admit that Mr. Davis has served as Acadia's Chief Executive Officer and a member of the Company's Board of Directors since September 2015. Defendants also admit that Mr. Davis joined Acadia in July 2014 as Executive Vice President, Chief Financial Officer and Chief Business Officer. Defendants also admit that, during the proposed Class Period, Mr. Davis sold 530,392 shares of Acadia stock pursuant to 10b5-1 plans and to cover taxes on the vesting on Restricted Stock Units, for total proceeds of approximately $24.6 million. The remainder of paragraph 23 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 23.

24. In response to paragraph 24, Defendants admit that Dr. Stankovic has served as Acadia's President since November 2018. Defendants also admit that Dr. Stankovic was Acadia's Executive Vice President, Head of Research and Development from November 2015 through November 2018. Defendants also admit that, during the proposed Class Period, Dr. Stankovic sold 368,993 shares of Acadia stock pursuant to 10b5-1 plans and to cover taxes on the vesting on Restricted Stock Units, for total proceeds of approximately $18.9 million. The remainder of paragraph 23 contains Plaintiffs' own characterizations, arguments, or legal conclusions to

which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 24.

25. Paragraph 25 does not contain an allegation of fact and therefore requires no response.

26. Paragraph 26 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 26.

27. In response to paragraph 27, Defendants admit that Acadia is a biopharmaceutical company focused on the development and commercialization of innovative medicines that address unmet medical needs in central nervous system disorders. Defendants also admit that, during the proposed class period, Acadia was developing pimavanserin as a treatment for DRP and as an adjunctive treatment for schizophrenia, as well as an adjunctive treatment for major depressive disorder. Except as expressly admitted herein, Defendants deny the allegations in paragraph 27.

28. Defendants admit the allegations in paragraph 28.

29. In response to paragraph 29, Defendants admit that NUPLAZID (pimavanserin) is Acadia's only FDA-approved product. Defendants also admit that pimavanserin is a selective serotonin inverse agonist that preferentially targets 5-HT2A receptors. Except as expressly admitted herein, Defendants deny the allegations in paragraph 29.

30. Defendants admit the allegations in paragraph 30.

31. Defendants admit the allegations in paragraph 31.

32. In response to paragraph 32, Defendants admit that Acadia's net product sales consist of sales of NUPLAZID (pimavanserin), Acadia's first and only commercial product to date. The remainder of paragraph 32 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7

To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 32.

33.    Defendants admit the allegations in paragraph 33.

34.    In response to paragraph 34, Defendants admit that on February 24, 2021, Acadia issued a press release announcing net sales guidance for 2021 of "$510 to $550 million." Defendants admit that on November 8, 2021, Acadia issued a press release reporting net product sales of $353.4 million for the nine months ended September 30, 2021. Except as expressly admitted herein, Defendants deny the allegations in paragraph 34.

35.    In response to paragraph 35, Defendants admit that Acadia initiated the HARMONY trial in 2017 to evaluate pimavanserin for the treatment of hallucinations and delusions associated with DRP; and that Acadia issued a press release on October 4, 2017, titled "ACADIA Pharmaceuticals Initiates Phase III Study of Pimavanserin in Dementia-Related Psychosis." To the extent that paragraph 35 purports to quote, summarize, or characterize the press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 35 differ in any way from the contents of the announcement, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 35.

36.    In response to paragraph 36, Defendants admit that the Company viewed expanding FDA approval of pimavanserin to treat DRP as commercially valuable. To the extent the remainder of paragraph 36 purports to quote, summarize, or characterize analyst reports, Defendants refer Plaintiffs to the contents of the analyst reports. To the extent that the allegations in paragraph 36 differ in any way from the contents of the analyst reports, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 36.

37.    Defendants admit the allegations in paragraph 37.

38.    Defendants admit the allegations in paragraph 38.

39.    In response to paragraph 39, Defendants admit that DRP occurs in patients with variety of types of dementia, including Alzheimer's disease, Dementia with Lewy bodies, Parkinson's disease dementia, Vascular dementia, and Frontotemporal dementia. Except as expressly admitted herein, Defendants deny the allegations in paragraph 39.

40.    Defendants admit that Alzheimer's is the most common neurodegenerative disorder. Defendants also admit that an estimated over 6 million people in the United States are living with Alzheimer's disease dementia  and studies suggest that approximately 30% of patients have psychosis, commonly consisting of delusions and hallucinations. As to the remainder of the allegations in paragraph 40, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them. Except as expressly admitted herein, Defendants deny the allegations in paragraph 40.

41.    Defendants admit the allegations in paragraph 41.

42.    Defendants admit the allegations in paragraph 42.

43.    Defendants admit the allegations in paragraph 43.

44.    In response to paragraph 44, Defendants admit that the sNDA was supported by results from HARMONY, the -019 Study, and the -020 Study, and included a large safety and tolerability database from completed and ongoing studies representing over 1500 patients with neurodegenerative disease. Except as expressly admitted herein, Defendants deny the allegations in paragraph 44.

45.    Defendants admit the allegations in paragraph 45, all of which were publicly disclosed by Acadia in a March 20, 2013, press release, were publicly available on clinicaltrials.gov, or both.

46.    In response to paragraph 46, Defendants admit that on November 27, 2012, Acadia issued a press release announcing top-line results from the -020 Study. To the extent that paragraph 46 purports to quote, summarize, or characterize the

November 27, 2012 press release, Defendants refer Plaintiffs to the contents of that document, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 46 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 46.

47. In response to paragraph 47, Defendants admit that the FDA's approval of pimavanserin for the treatment of hallucinations and delusions associated with PDP was based on data from the -020 Study and other supportive studies. Except as expressly admitted herein, Defendants deny the allegations in paragraph 47.

48. In response to paragraph 48, Defendants admit the -019 Study was initiated in November 2013, enrolled 181 patients, and was conducted at a single site – a network of care homes in London, United Kingdom. Defendants also admit the -019 Study was a double-blind, placebo-controlled exploratory trial designed to evaluate the efficacy and safety of pimavanserin as a treatment for patients with ADP. Defendants also admit that, following a screening period, patients in the -019 Study were randomized on a one-to-one basis to receive either pimavanserin or placebo once-daily. Defendants also admit that the primary endpoint of the -019 Study was antipsychotic efficacy from baseline to week six of dosing. Defendants also admit that the secondary endpoints of the -019 Study including the cognitive status of patients and the durability of response to pimavanserin, through week twelve of dosing. Defendants also admit that each of the facts identified above were publicly disclosed by Acadia in a December 20, 2016 press release, the November 7, 2016 earnings call, or both.

49. In response to paragraph 49, Defendants admit that Acadia issued a press release on December 20, 2016 announcing top-line results for the -019 Study. To the extent that paragraph 49 purports to quote, summarize, or characterize the press release, or any other document, Defendants refer Plaintiffs to the contents of the press release or other documents, which speak for themselves and are the best

Cooley LLP
Attorneys at Law
San Diego

10

evidence of their contents.  To the extent that the allegations in paragraph 49 differ in any way from the contents of the press release or other documents, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 49.

50.    In response to paragraph 50, Defendants admit that on May 15, 2017, Acadia had an End-of-Phase II meeting with the FDA, the primary objective was to obtain feedback from the FDA on whether the ACP-103-045 study (later identified as the HARMONY study), as designed, and in the context of planned, ongoing, and completed clinical studies with pimavanserin, would be sufficient to support an indication of hallucinations and delusions associated with DRP. Except as expressly admitted herein, Defendants deny the allegations in paragraph 50.

51.    Defendants deny the allegations in paragraph 51.

52.    In response to paragraph 52, Defendants admit that Acadia issued a press release on October 4, 2017, announcing the initiation of the HARMONY study, which was a Phase III study to evaluate pimavanserin for the treatment of hallucinations and delusions associated with DRP. Defendants also admit that DRP is a broader indication than PDP or ADP. Defendants also admit that pimavanserin was approved by the FDA for the treatment of hallucinations and delusions associated with PDP. Defendants also admit that the -019 study evaluated pimavanserin in patients with ADP. Except as expressly admitted herein, Defendants deny the allegations in paragraph 52.

53.    Defendants admit the allegations in paragraph 53, all of which are disclosed in the HARMONY study protocol, which has been publicly available at clinicaltrials.gov since August 16, 2018, or the HARMONY statistical analysis plan which has been publicly available at clinicaltrials.gov since July 26, 2019.

54.    Defendants deny the allegations in paragraph 54.

55.    Defendants admit the allegations in paragraph 55.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11

**ANSWER TO FAC**
**CASE NO. 3: 21-CV-00762-WQH-NLS**

56.    In response to paragraph 56, Defendants admit that HARMONY's primary completion date, as defined by and publicly posted on clinicaltrials.gov, was July 31, 2019. Except as expressly admitted herein, Defendants deny the allegations in paragraph 56.

57.    In response to paragraph 57, Defendants admit that Acadia issued a press release on September 9, 2019. To the extent that paragraph 57 purports to quote, summarize, or characterize the September 9, 2019 press release, Defendants refer Plaintiffs to the contents of that document, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 57 differ in any way from the contents of that press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 57.

58.    In response to paragraph 57, Defendants admit that Acadia issued a press release on September 9, 2019. To the extent that paragraph 58 purports to quote, summarize, or characterize the September 9, 2019, press release, Defendants refer Plaintiffs to the contents of the document, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 58 differ in any way from the contents of that press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 58.

59.    In response to paragraph 59, Defendants admit that Acadia issued a press release on September 17, 2019, announcing a public offering of Acadia common stock pursuant to a shelf registration statement filed by Acadia with the Securities and Exchange Commission ("SEC") that became automatically effective on November 26, 2018. To the extent that paragraph 59 purports to quote, summarize, or characterize the September 17, 2019, press release, Defendants refer Plaintiffs to the contents of that document, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 59 differ in any way from

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12

the contents of that press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 59.

60.    In response to paragraph 60, Defendants admit that Acadia's follow-on offering referenced in its September 17, 2019, press release closed on September 20, 2019 and gross proceeds from the offering to Acadia, before deducting underwriting discounts and commissions and other estimated offering expenses payable by Acadia, were approximately $287.5 million.  Except as expressly admitted herein, Defendants deny the allegations in paragraph 60.

61.    In response to paragraph 61, Defendants admit that Acadia issued a press release on October 3, 2019. To the extent that paragraph 61 purports to quote, summarize, or characterize the October 3, 2019, press release, Defendants refer Plaintiffs to the contents of that document, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 61 differ in any way from the contents of that press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 61.

62.    In response to paragraph 62, Defendants admit that Acadia disclosed the top line results and subgroup data from the HARMONY Study at the 12th Clinical Trials on Alzheimer's Disease ("CTAD") Meeting on December 4, 2019. To the extent that paragraph 62 purports to quote, summarize, or characterize that disclosure or associated data, Defendants refer Plaintiffs to the contents of the disclosure, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 62 differ in any way from the contents of that disclosure, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 62.

63.    Defendants admit the allegations in paragraph 63.

64.    Defendants admit the allegations in paragraph 64.

65.    In response to paragraph 65, Defendants admit gaining FDA approval is a lengthy, expensive, and uncertain process. The remainder of paragraph 65 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 65.

66.    In response to paragraph 66, Defendants admit that pimavanserin was the first and only medicine to be approved by the FDA for the indication of hallucinations and delusions associated with Parkinson's disease psychosis. To the extent the remainder of paragraph 66 purports to quote, summarize, or characterize information published by the National Parkinson Foundation, Defendants refer Plaintiffs to such publications, which speak for themselves and are the best evidence of their contents.  To the extent that the allegations in paragraph 66 differ in any way from such publications, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 66.

67.    In response to paragraph 67, Defendants admit that NUPLAZID is indicated for the treatment of hallucinations and delusions associated with PDP and includes a warning that NUPLAZID is not approved for the treatment of patients with dementia-related psychosis unrelated to the hallucinations and delusions associated with Parkinson's disease psychosis.  Except as expressly admitted herein, Defendants deny the allegations in paragraph 67.

68.    Paragraph 68 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 68.

69.    In response to paragraph 69, Defendants admit that dementia affects approximately 8 million people in the U.S., of which an estimated 2.4 million people suffer from dementia-related hallucinations and delusions. Defendants further admit that Acadia submitted an sNDA to the FDA for NUPLAZID® (pimavanserin) for the

Treatment of Hallucinations and Delusions Associated with Dementia-Related Psychosis. Except as expressly admitted herein, Defendants deny the allegations in paragraph 69.

70.    Paragraph 70 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 70.

71.    Paragraph 71 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 71.

72.    In response to paragraph 72, Defendants admit that Acadia submitted an sNDA to the FDA for NUPLAZID® (pimavanserin) for the Treatment of Hallucinations and Delusions Associated with Dementia-Related Psychosis, which was supported by results from HARMONY, the -019 Study, and the -020 Study, and included a large safety and tolerability database from completed and ongoing studies representing over 1500 patients with neurodegenerative disease. The remainder of paragraph 72 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny such allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 72.

73.    Paragraph 73 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 73.

74.    In response to paragraph 74, Defendants admit that the HARMONY Study enrolled 392 patients with a likely clinical diagnosis of AD, DLB, PDD, VaD, or FTD.  Defendants also admit that 392 patients entered the 12-week, open-label treatment phase and 217 patients completed the open-label treatment phase. Defendants also admit that 134 patients discontinued the trial early: 41 patients were administratively discontinued at study termination, 70 patients terminated early

Cooley LLP
Attorneys at Law
San Diego

15

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

because of lack of response in the open label treatment phase, 27 patients terminated early because of an adverse event, 17 patients withdrew, and 20 patients terminated early for other reasons. Except as expressly admitted herein, Defendants deny the allegations in paragraph 74.

75. In response to paragraph 75, Defendants admit that the HARMONY Study enrolled 392 patients, and the most likely clinical diagnosis for those patients was as follows: 59 patients (approximately 15.1%) with PDD, 260 patients (approximately 66.3%) with AD, 38 patients (approximately 9.7%) with VaD, 28 patients (approximately 7.1%) with DLP, and 7 (approximately 1.8%) patients with FTD. Except as expressly admitted herein, Defendants deny the allegations in paragraph 75.

76. Paragraph 76 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants admit that patients with a most likely clinical diagnosis of PDD were the second largest subgroup enrolled in the HARMONY study, and that pimavanserin was already FDA-approved to treat PDD. Except as expressly admitted herein, Defendants deny the allegations in paragraph 76.

77. Paragraph 77 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 77.

78. Paragraph 78 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 78.

79. Paragraph 79 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 79.

80. In response to paragraph 80, Defendants admit that Acadia's sNDA to the FDA for NUPLAZID® (pimavanserin) for the Treatment of Hallucinations and

Delusions Associated with Dementia-Related Psychosis was supported by results from HARMONY, the -019 Study, and the -020 Study, and included a large safety and tolerability database from completed and ongoing studies representing over 1500 patients with neurodegenerative disease. Defendants also admit that the -019 study evaluated pimavanserin in patients with ADP. Except as expressly admitted herein, Defendants deny the allegations in paragraph 80.

81. Paragraph 81 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 81.

82. In response to paragraph 82, Defendants admit that the double-blind relapse rate in the HARMONY study, among patients with a most likely clinical diagnosis of PDD, was 50.0% (10/20) for those treated with placebo and 6.7% (1/15) for those treated with pimavanserin. Defendants also admit that Acadia disclosed the top line results and subgroup data from the HARMONY Study at the CTAD Meeting on December 4, 2019. To the extent that paragraph 82 purports to quote, summarize, or characterize that disclosure or associated data, Defendants refer Plaintiffs to the contents of the disclosure, which speaks for itself and is the best evidence of its contents. The remainder of paragraph 82 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 82.

83. In response to paragraph 83, Defendants admit that the double-blind relapse rate in the HARMONY study: (i) among patients with a most likely clinical diagnosis of VaD, was 16.7% (2/12) for those treated with placebo, and 16.7% (2/12) for those treated with pimavanserin; (ii) among patients with a most likely clinical diagnosis of FTD, was 0.0% (0/2) for those treated with placebo and 100.0% (0/1) for those treated with pimavanserin; and (iii) among patients with a most likely clinical diagnosis of AD, was 22.6% (14/62) for those treated with placebo and 13.1

(8/61) for those treated with pimavanserin. Defendants also admit that Acadia disclosed the top line results and subgroup data from the HARMONY Study at the CTAD Meeting on December 4, 2019. To the extent that paragraph 83 purports to quote, summarize, or characterize that disclosure or associated data, Defendants refer Plaintiffs to the contents of the disclosure, which speaks for itself and is the best evidence of its contents. The remainder of paragraph 83 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 83.

84. Paragraph 84 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 84.

85. Paragraph 85 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 85.

86. Paragraph 86 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 86.

87. In response to paragraph 87, Defendants admit that primary outcome measure for the -019 Study was antipsychotic efficacy, measured as the change from Baseline to Day 43 in the Neuropsychiatric Inventory-Nursing Home Version (NPI-NH) psychosis score. Defendants also admit that Acadia published the -019 Study's full data set in the *Journal of Prevention of Alzheimer's Disease* on August 16, 2018. To the extent that paragraph 87 purports to quote, summarize, or characterize that article, Defendants refer Plaintiffs to the contents of the article, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 87 differ in any way from the contents of these statements and data,

Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 87.

88.    Paragraph 88 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 88.

89.    Paragraph 89 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 89.

90.    Paragraph 90 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 90.

91.    Paragraph 91 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 91.

92.    Paragraph 92 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 92.

93.    In response to paragraph 93, Defendants admit that Congress passed amendments to the Food, Drug, and Cosmetic Act of 1937 ("FD&C Act"), and that these amendments were known as Public Law 78-871 or the Kefauver-Harris Drug Amendments of 1962. To the extent that paragraph 93 purports to quote, summarize, or characterize the amendments, Defendants refer Plaintiffs to the contents of the amendments, which speak for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 93 differ in any way from the contents of the amendments, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 93.

94.    To the extent that paragraph 94 purports to quote, summarize, or characterize the FD&C Act, Defendants refer Plaintiffs to the contents of the FD&C

Act, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 94 differ in any way from the contents of the FD&C Act, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 94.

95. To the extent that paragraph 95 purports to quote, summarize, or characterize legislative records and case law, Defendants refer Plaintiffs to the contents of those legislative records and case law, which speak for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 95 differ in any way from the contents of the legislative records and case law, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 95.

96. To the extent that paragraph 96 purports to quote, summarize, or characterize legislative records and case law, Defendants refer Plaintiffs to the contents of those legislative records and case law, which speak for themselves and are the best evidence of their contents. To the extent that the allegations in paragraph 96 differ in any way from the contents of the legislative records and case law, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 96.

97. In response to paragraph 97, Defendants admit that in 1997, Congress enacted the FDA Modernization Act of 1997 ("FDAMA"). To the extent that paragraph 97 purports to quote, summarize, or characterize the FDAMA, Defendants refer Plaintiffs to the contents of the FDAMA, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 97 differ in any way from the contents of the FDAMA, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 97.

98. To the extent that paragraph 98 purports to quote, summarize, or characterize the FDAMA, Defendants refer Plaintiffs to the contents of the FDAMA, which speaks for itself and is the best evidence of its contents. To the extent that the

allegations in paragraph 98 differ in any way from the contents of the FDAMA, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 98.

99.     To the extent that paragraph 99 purports to quote, summarize, or characterize the FD&C Act, Defendants refer Plaintiffs to the contents of the FD&C Act, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 99 differ in any way from the contents of the FD&C Act, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 99.

100.   Paragraph 100 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 100.

101.   In response to paragraph 105, Defendants admit that, on March 3, 2021, Acadia received a notification from the FDA stating that as part of its ongoing review of the sNDA, the FDA has identified deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time. Defendants also admit that following this notification, Acadia reached out to the FDA, but as of March 8, 2019, had not received any additional information. The remainder of Paragraph 101 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 101.

102.   The first sentence of paragraph 102 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in the first sentence of paragraph 102. As to the remainder of paragraph 102, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations, and on that basis, deny them.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21

103.   Paragraph 103 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 103.

104.   Defendants admit the allegations in paragraph 104.

105.   In response to paragraph 105, Defendants admit that, during the proposed Class Period, Mr. Davis sold 530,392 shares of Acadia stock pursuant to 10b5-1 plans, adopted on August 22, 2019, and December 19, 2019, and to cover taxes on the vesting on Restricted Stock Units, for total proceeds of approximately $24.6 million. Defendants admit that, since the end of the proposed Class Period until October 14, 2022, Mr. Davis has sold 23,942 shares of Acadia stock for total proceeds of approximately $490,054. Defendants admit that, prior to the proposed Class Period, Mr. Davis sold no Acadia stock. Except as expressly admitted herein, Defendants deny the allegations in paragraph 105.

106.   In response to paragraph 106, Defendants admit that, during the proposed Class Period, Dr. Stankovic sold 368,993 shares of Acadia stock pursuant to 10b5-1 plans, adopted on November 8, 2019, and December 3, 2020, and to cover taxes on the vesting on Restricted Stock Units, for total proceeds of approximately $18.9 million. Defendants admit that, since the end of the proposed Class Period until October 14, 2022, Dr. Stankovic has sold 14,674 shares of Acadia stock for total proceeds of approximately $295,038. Defendants admit that, prior to the proposed Class Period, Dr. Stankovic sold no Acadia stock. Except as expressly admitted herein, Defendants deny the allegations in paragraph 106.

107.   In response to paragraph 107, Defendants admit that Acadia issued a press release on September 9, 2019. To the extent that paragraph 107 purports to quote, summarize, or characterize the September 9, 2019, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 107 differ in any way from the contents of the press release, Defendants deny the

allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 107.

108. Paragraph 108 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 108.

109. In response to paragraph 109, Defendants admit that Acadia held a conference call on September 9, 2019. To the extent that paragraph 109 purports to quote, summarize, or characterize the September 9, 2019, conference call, Defendants refer Plaintiffs to the transcript of the conference call, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 109 differ in any way from the contents of the conference call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 109.

110. Paragraph 110 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 110.

111. In response to paragraph 111, Defendants admit that Acadia held an earnings call on October 30, 2019. To the extent that paragraph 111 purports to quote, summarize, or characterize the October 30, 2019, earnings call, Defendants refer Plaintiffs to the transcript of the earnings call, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 111 differ in any way from the contents of the earnings call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 111.

112. Paragraph 112 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 112.

113.   In response to paragraph 113, Defendants admit that Acadia held an earnings call on February 26, 2020.  To the extent that paragraph 113 purports to quote, summarize, or characterize the February 26, 2020, earnings call, Defendants refer Plaintiffs to the transcript of the earnings call, which speaks for itself and is the best evidence of the statements made.  To the extent that the allegations in paragraph 113 differ in any way from the contents of the earnings call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 113.

114.   Paragraph 114 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 114.

115.   In response to paragraph 115, Defendants admit that Acadia held an earnings call on May 7, 2020.  To the extent that paragraph 115 purports to quote, summarize, or characterize the May 7, 2020, earnings call, Defendants refer Plaintiffs to the transcript of the earnings call, which speaks for itself and is the best evidence of the statements made.  To the extent that the allegations in paragraph 115 differ in any way from the contents of the earnings call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 115.

116.   Paragraph 116 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 116.

117.   In response to paragraph 117, Defendants admit that Mr. Davis made certain statements during the Bank of America Merrill Lynch Healthcare Conference on May 12, 2020. To the extent that paragraph 117 purports to quote, summarize, or characterize those statements, Defendants refer Plaintiffs to the transcript from that conference, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 117 differ in any way from the

statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 117.

118.   Paragraph 118 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 118.

119.   In response to paragraph 119, Defendants admit that Acadia issued a press release on June 15, 2020. To the extent that paragraph 119 purports to quote, summarize, or characterize the June 15, 2020, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 119 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 119.

120.   Paragraph 120 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 120.

121.   In response to paragraph 121, Defendants admit that Acadia issued a press release on July 20, 2020. To the extent that paragraph 121 purports to quote, summarize, or characterize the July 20, 2020. press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents.  To the extent that the allegations in paragraph 121 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 121.

122.   Paragraph 122 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 122.

123. In response to paragraph 123, Defendants admit that Acadia issued a press release on August 5, 2020. To the extent that paragraph 123 purports to quote, summarize, or characterize the August 5, 2020, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 123 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 123.

124. Paragraph 124 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 124.

125. In response to paragraph 125, Defendants admit that Mr. Davis made certain statements during the JMP Securities CNS Forum on August 19, 2020. To the extent that paragraph 125 purports to quote, summarize, or characterize the statements, Defendants refer Plaintiffs to the transcript of the statements, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 125 differ in any way from the statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 125.

126. Paragraph 126 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 126.

127. In response to paragraph 127, Defendants admit that, on August 6, 2020, Acadia filed with the SEC a Form 10-Q for the quarter ended June 30, 2020 (the "2Q20 10-Q"). To the extent that paragraph 127 purports to quote, summarize, or characterize the 2Q20 10-Q, Defendants refer Plaintiffs to the 2Q20 10-Q, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 127 differ in any way from the contents of the 2Q20 10-Q,

Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 127.

128. In response to paragraph 128, Defendants admit that Mr. Davis and Dr. Stankovic made certain statements during the Morgan Stanley Global Healthcare Conference on September 14, 2020. To the extent that paragraph 128 purports to quote, summarize, or characterize those statements, Defendants refer Plaintiffs to the transcript of the statements, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 128 differ in any way from the statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 128.

129. Paragraph 129 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 129.

130. In response to paragraph 130, Defendants admit that Acadia held an earnings call on November 4, 2020. To the extent that paragraph 130 purports to quote, summarize, or characterize the November 4, 2020, earnings call, Defendants refer Plaintiffs to the transcript of that call, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 130 differ in any way from the contents of the earnings call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 130.

131. Paragraph 131 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 131.

132. In response to paragraph 132, Defendants admit that Mr. Davis made certain statements during the Stifel Virtual Healthcare Conference on November 17, 2020. To the extent that paragraph 132 purports to quote, summarize, or characterize those statements, Defendants refer Plaintiffs to the transcript from that conference,

which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 132 differ in any way from the statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 132.

133. Paragraph 133 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 133.

134. In response to paragraph 134, Defendants admit that Mr. Davis made certain statements during the JP Morgan Virtual Healthcare Conference on January 12, 2021. To the extent that paragraph 134 purports to quote, summarize, or characterize those statements, Defendants refer Plaintiffs to the transcript from that conference, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 134 differ in any way from the statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 134.

135. In response to paragraph 135, Defendants admit that Mr. Davis made statements during the JP Morgan Virtual Healthcare Conference on January 12, 2021. To the extent that paragraph 135 purports to quote, summarize, or characterize those statements, Defendants refer Plaintiffs to the transcript from that conference, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 135 differ in any way from the statements, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 135.

136. Paragraph 136 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 136.

137. In response to paragraph 137, Defendants admit that Acadia issued a press release on February 24, 2021. To the extent that paragraph 137 purports to

quote, summarize, or characterize the February 24, 2021, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 137 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 137.

138. In response to paragraph 138, Defendants admit that Acadia held an earnings call on February 24, 2021. To the extent that paragraph 138 purports to quote, summarize, or characterize the February 24, 2021, earnings call, Defendants refer Plaintiffs to the transcript of that call, which speaks for itself and is the best evidence of the statements made. To the extent that the allegations in paragraph 138 differ in any way from the contents of the earnings call, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 138.

139. Paragraph 139 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 139.

140. In response to paragraph 140, Defendants admit that, on February 25, 2021, Acadia filed with the SEC a Form 10-K for the year ended June 30, 2020 (the "2020 10-K"). To the extent that paragraph 140 purports to quote, summarize, or characterize the 2020 10-K, Defendants refer Plaintiffs to the 2020 10-K, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 140 differ in any way from the contents of the 2020 10-K, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 140.

141. In response to paragraph 141, Defendants admit that Acadia filed its 2020 10-K with the SEC on February 25, 2021. To the extent that paragraph 141 purports to quote, summarize, or characterize the 2020 10-K, Defendants refer

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

Plaintiffs to the 2020 10-K, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 141 differ in any way from the contents of the 2020 10-K, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 141.

142. Paragraph 142 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 142.

143. In response to paragraph 143, Defendants admit that Acadia issued a press release on March 8, 2021. To the extent that paragraph 143 purports to quote, summarize, or characterize the March 8, 2021, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 143 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 143.

144. In response to paragraph 144, Defendants admit that Acadia's stock price closed at $25.02 per share on March 9, 2021. Except as expressly admitted herein, Defendants deny the allegations in paragraph 144.

145. In response to paragraph 145, Defendants admit that Acadia issued a press release on April 5, 2021. To the extent that paragraph 145 purports to quote, summarize, or characterize the April 5, 2021, press release, Defendants refer Plaintiffs to the contents of the press release, which speaks for itself and is the best evidence of its contents. To the extent that the allegations in paragraph 145 differ in any way from the contents of the press release, Defendants deny the allegations. Except as expressly admitted herein, Defendants deny the allegations in paragraph 145.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

146.   In response to paragraph 146, Defendants admit that Acadia's stock price closed at $21.18 per share on April 5, 2021. Except as expressly admitted herein, Defendants deny the allegations in paragraph 146.

147.   Paragraph 147 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 147.

148.   In response to paragraph 148, Defendants deny that this action can be maintained as a class action under Federal Rules of Civil Procedure 23.   The remainder of paragraph 148 sets forth Plaintiffs' proposed class definition and does not require a response; to the extent that a response is required, Defendants deny the allegations.   Except as expressly admitted herein, Defendants deny the allegations in paragraph 148.

149.   Paragraph 149 sets forth Plaintiffs' proposed class definition and does not require a response; to the extent that a response is required, Defendants deny the allegations in paragraph 149.

150.   Paragraph 150 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 150.

151.   Paragraph 151 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 151.

152.   Paragraph 152 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 152.

153.   Paragraph 153 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 153.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

154. Paragraph 154 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 154.

155. Paragraph 155 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 155.

156. Paragraph 156 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 156.

157. Paragraph 157 does not contain factual allegations and therefore requires no response.

158. In response to paragraph 158, Defendants admit that Plaintiffs assert claims against Defendants under Sections 10(b) of the Exchange Act and SEC Rule 10b-5. Except as expressly admitted herein, Defendants deny the allegations in paragraph 158.

159. Paragraph 159 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 159.

160. Paragraph 160 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 160.

161. Paragraph 161 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 161.

162. Paragraph 162 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 162.

163. Paragraph 163 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 163.

164. Paragraph 164 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 164.

165. Paragraph 165 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 165.

166. Paragraph 166 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 166.

167. Paragraph 167 does not contain factual allegations and therefore requires no response.

168. In response to paragraph 168, Defendants admit that, during the proposed class period, Mr. Davis and Dr. Stankovic were members of Acadia's executive team, and, in accordance with their respective duties, participated in the conduct of Acadia's business affairs. Except as expressly admitted herein, Defendants deny the allegations in paragraph 168.

169. Paragraph 169 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 169.

170. Paragraph 170 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 170.

171. Paragraph 171 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 171.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

33

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

172.    Paragraph 172 contains Plaintiffs' own characterizations, arguments, or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in paragraph 172.

## PRAYER FOR RELIEF

The paragraph in this section entitled "Prayer for Relief" is Plaintiffs' statement of requested relief, to which no response is required; to the extent a response is required, Defendants deny the allegations therein, including but not limited to denying that Plaintiff is entitled to judgment and that Plaintiff is entitled to any relief whatsoever.

## DEMAND FOR TRIAL BY JURY

The paragraph in this section entitled "Demand For Trial By Jury" is Plaintiffs' demand for a jury trial, to which no response is required.

## AFFIRMATIVE DEFENSES

As separate affirmative defenses to the causes of action in the FAC, and without assuming any burden of proof that would otherwise rest on Plaintiffs, Defendants allege as follows:

## FIRST AFFIRMATIVE DEFENSE

1.    The FAC, and each and every cause of action alleged therein, is barred to the extent Plaintiffs' allegations are based on alleged projections, forecasts, or predictions of future events or results, because such projections, forecasts, or predictions were identified as forward-looking statements and accompanied by meaningful cautionary language, including in Defendants' public filings with the SEC and as referenced or incorporated during investor conference calls, that identified factors that could cause actual results to differ materially from those in the forward-looking statements; were immaterial; or were not made with actual knowledge that the statements were false or misleading when made. All such statements fall within the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. § 77z-2(c).

## SECOND AFFIRMATIVE DEFENSE

2.      The FAC, and each and every cause of action alleged therein, is barred because the facts alleged to have been misrepresented or omitted (including information regarding the -019 and HARMONY studies' design and results, including subgroup analysis, risks regarding FDA approval, and the nature of Acadia's agreement with the FDA regarding the submission of Acadia's sNDA) were known to, received by, or otherwise publicly available to Plaintiffs, members of the putative class, and the securities markets generally.

## THIRD AFFIRMATIVE DEFENSE

3.      The FAC, and each and every cause of action alleged therein, is barred because the stock sales by the Individual Defendants identified in the FAC are not evidence of scienter. Each of these trades were made to pay taxes on Restricted Stock Units as they vested, or were made pursuant to Rule 10b5-1 plans, and neither the terms of those plans nor the circumstances in which the Individual Defendants entered into such plans were intended or designed to take advantage of any alleged fraud.

## FOURTH AFFIRMATIVE DEFENSE

4.      The FAC, and each and every cause of action alleged therein, is barred because this action is not maintainable as a class action pursuant to Federal Rule of Civil Procedure 23.

## FIFTH AFFIRMATIVE DEFENSE

5.      The FAC, and each and every cause of action alleged therein, is barred because, on information and belief, Plaintiffs and members of the putative class would have purchased Acadia stock at the same price even if they had known, at the time of their respective purchases, of the facts alleged to have been misrepresented or omitted.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ANSWER TO FAC
CASE NO. 3: 21-CV-00762-WQH-NLS

## RESERVATION OF RIGHTS

Defendants expressly reserve the right to amend or supplement their Answer, defenses and all other pleadings, as permitted by law. Defendants further reserve the right to assert any and all additional defenses under any applicable law, in the event that discovery indicates such defenses would be appropriate, and to assert any cross-claims, counterclaims and/or third party claims.

## PRAYER FOR RELIEF

WHEREFORE, Defendants pray that this Court enter judgment as follows:

1. That Plaintiffs take nothing by the FAC;
2. For costs, attorneys' fees and expert witness fees;
3. For judgment in favor of Defendants; and
4. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Defendants demand a trial by jury.

Dated: October 19, 2022            COOLEY LLP


By: */s/ Peter M. Adams*
        Peter M. Adams

Attorneys for Defendants
Acadia Pharmaceuticals, Inc., Stephen R. Davis, and Srdjan (Serge) R. Stankovic

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

36                                    ANSWER TO FAC
                          CASE NO. 3: 21-CV-00762-WQH-NLS