# EXHIBIT 2

COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
MATTHEW D. MARTINEZ (333932)
(mmartinez@cooley.com)
10265 Science Center Drive
San Diego, California 92121
Telephone: (858) 550 6000
Facsimile: (858) 550 6420

CHRISTOPHER B. DURBIN (218611)
(cdurbin@cooley.com)
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
Telephone: (206) 452 8700
Facsimile: (206) 452 8800

Attorneys for Defendants
Acadia Pharmaceuticals Inc., Stephen R.
Davis, and Srdjan (Serge) R. Stankovic

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM AND OHIO CARPENTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and SRDJAN (SERGE) R. STANKOVIC,

Defendants.

Case No. 3:21-CV-00762-WQH-MSB

**DEFENDANT ACADIA PHARMACEUTICALS INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' COMBINED FIRST SET OF REQUESTS FOR ADMISSION AND SECOND SET OF INTERROGATORIes**

ACADIA'S OBJECTIONS & RESPONSES TO
PLAINTIFFS' COMBINED RFAS AND ROGS

| PROPOUNDING PARTIES: | LEAD PLAINTIFF CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM |
|---|---|
| | ADDITIONAL PLAINTIFF OHIO CARPENTERS' PENSION FUND |
| RESPONDING PARTY: | DEFENDANT ACADIA PHARMACEUTICALS INC. |
| REQUEST FOR ADMISSION SET NUMBER: | ONE |
| INTERROGATORY SET NUMBER: | TWO |

Pursuant to Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, Civil Rules 33.1 and 36.1 of the Local Rules of the U.S. District Court for the Southern District of California, and all other applicable rules and laws, Defendant Acadia Pharmaceuticals Inc. ("Acadia") provides the following responses to Plaintiffs' Combined First Set of Requests for Admission and Second Set of Interrogatories to Defendant Acadia Pharmaceuticals Inc. (collectively referred to herein as the "Requests" and "Interrogatories," respectively).

## I.    GENERAL RESPONSE

1.     Acadia's responses to the Requests and Interrogatories are made to the best of Acadia's current employees' present knowledge, information, and belief. This response is at all times subject to additional or different information that discovery or further investigation may disclose and, while based on the present state of Acadia's current employees' recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Acadia's further discovery or investigation.

2.     Acadia reserves the right to make any use of, or to introduce at any hearing and at trial, information responsive to the Requests and Interrogatories but discovered subsequent to the date of Acadia's responses.

3.      Acadia reserves the right to amend, modify, or supplement the responses and objections below should such amendments, modifications, or supplements become appropriate as new information becomes available.

4.      Acadia will not provide information in response to the Requests and Interrogatories that Acadia or any other party to this litigation deems to embody material that is private, business confidential, proprietary, trade secret or otherwise protected from disclosure pursuant to Federal Rule of Civil Procedure 26(c)(7) and/or Federal Rule of Evidence 501, except in accordance with and subject to the Stipulation and Protective Order entered by the Court on April 7, 2023 (ECF No. 99) ("Protective Order").

5.      The provision of a response to any of these Requests or Interrogatories does not constitute a waiver of any objection regarding the use of said response in this action. Acadia reserves all objections or other questions as to the competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent proceeding in or hearing or trial of this or any other action for any purpose whatsoever.

6.      Acadia reserves the right to object on any ground at any time to such other or supplemental requests or interrogatories as Plaintiffs may at any time propound involving or relating to the subject matter of these Requests and Interrogatories.

7.      Definitions or usages of words or phrases in these responses are not intended to be, and shall not be, construed as admissions as to the meaning of words or phrases at issue in the action and shall have no binding effect on Acadia in this or any other proceedings.

8.      Acadia objects generally to the Requests and Interrogatories insofar as any Request or Interrogatory purports to require Acadia to respond based on definitions to which Acadia has objected. Acadia will construe the definitions in such Requests and Interrogatories in accordance with Acadia's previously-stated

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2

ACADIA'S OBJECTIONS & RESPONSES TO
PLAINTIFFS' COMBINED RFAS AND ROGS

objections to such definitions.

## II.   OBJECTIONS TO DEFINITIONS

1.     Acadia objects to the definition of "Acadia" as overbroad and unduly burdensome to the extent it purports to include "predecessors, successors, parents, subsidiaries, and/or affiliates" and "past or present directors, officers, managers, managing directors, partners, principals, employees, accountants, advisors, representatives, agents, and any other Persons who acted or purported to act on their behalf." Acadia will construe "Acadia" to mean Acadia Pharmaceuticals Inc.

2.     Acadia objects to the definition of "Complete Response Letter" as vague and ambiguous based on the use of the phrase "first announced." Acadia will construe "Complete Response Letter" to mean the Complete Response Letter issued by the FDA to Acadia dated April 2, 2021, and publicly announced by Acadia on April 5, 2021.

3.     Acadia objects to the definition of "Disclose[d]/[ing]" as vague, ambiguous, and lacking foundation with respect to the distinction between "directly" and "indirectly."

4.     Acadia objects to the use of the phrase "any type" within the definition of "DRP" because it renders the definition vague and ambiguous. Acadia will construe "DRP" to mean dementia-related psychosis, the indication for which Acadia was seeking FDA approval in the sNDA.

5.     Acadia objects to the definition of "FDA" as vague and ambiguous to the extent it purports to include "agents" and "representatives" without defining those terms. Acadia will construe "FDA" to mean the United States Food and Drug Administration and its employees acting in their official capacity.

6.     Acadia objects to the definition of "Harmony" and the "Harmony Study" as vague and ambiguous to the extent it purports to include "references to what would later become known as the 'Harmony Study,' even if it was originally

referred to using a different term or name." Defendants will construe "Harmony" and "Harmony Study" to refer to Study ACP-103-045.

7.    Acadia objects to the definition "Identify" to the same extent it objects to Instruction No. 7 as detailed below.

8.    Acadia objects to the definition of "SEC" as vague and ambiguous to the extent it purports to include "agents" and "representatives" without defining those terms. Acadia will construe "SEC" to mean the United States Securities and Exchange Commission and its employees acting in their official capacity.

9.    Acadia objects to the definition of "sNDA" as overbroad, unduly burdensome, vague, ambiguous, and not proportional to the needs of this case to the extent it purports to include "all amendments thereto and all additional Documents or other materials subsequently submitted to the FDA in connection with that application." Acadia will construe "sNDA" to mean the supplemental new drug application that Acadia submitted to the FDA on June 3, 2020.

10.    Acadia objects to the definitions of "You" and "Your" as overbroad for the same reasons that Acadia objects to the definition of Acadia as overbroad. Acadia will construe "You" and "Your" consistent with its construction of the term Acadia.

**III.    OBJECTIONS TO INSTRUCTIONS**

1.    Acadia objects to every Instruction insofar as it imposes different or greater obligations on Acadia than Federal Rules of Civil Procedure Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, Civil Rules 33.1 and 36.1 of the Court's Local Civil Rules, the Protective Order, and the Stipulation and Order for the Production of Documents and ESI entered by the Court on April 7, 2023 (ECF No. 100) ("ESI Stipulation") because such instructions would subject Acadia to undue burden.

2.    Acadia further objects to every Instruction to the extent it is not an instruction, but rather Plaintiffs' interpretation of the law. Acadia will respond to the Interrogatories and Requests in compliance with Federal Rules of Civil Procedure

Rules 26, 33 and 36 of the Federal Rules of Civil Procedure, Civil Rules 33.1 and 36.1 of the Court's Local Civil Rules, and the ESI Stipulation and Protective Order regardless of Plaintiffs' views of Acadia's obligations.

3.     Acadia further specifically objects to Instruction No. 7 insofar as it imposes different or greater obligations on Acadia than Federal Rules of Civil Procedure Rule 33 and any applicable Local Rules and orders of this Court because such instructions would subject Acadia to undue burden. Acadia further objects to this Instruction to the extent it purports to require Acadia to identify documents by specific bates numbers, when other methods would suffice. Similarly, Acadia objects to this Instruction to the extent it purports to require Acadia to provide additional identifying information when identification by bates number would suffice. Acadia further objects to the portion of Instruction No. 7 requiring Acadia to state "how the contents of such initial disclosure was thereafter made available to the public" because it renders every Interrogatory with the term "Identify" compound.

## IV.   SPECIFIC OBJECTIONS AND RESPONSES TO THE INDIVIDUAL REQUESTS FOR ADMISSIONS AND INTERROGATORIES

Without waiving or limiting in any manner any of the foregoing General Responses and Objections to the Definitions and Instructions, but rather incorporating them into the following responses to the extent applicable, Acadia responds to the Requests and Interrogatories as follows:

**REQUEST FOR ADMISSION NO. 1:**

Admit that ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 is a true, correct, and complete copy of the final version of the official minutes of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "true, correct, and complete" as vague and ambiguous, as the terms "true" and

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ACADIA'S OBJECTIONS & RESPONSES TO PLAINTIFFS' COMBINED RFAS AND ROGS

"correct" do not appear to have different meanings. Acadia will construe this phrase to mean that the document is a complete and accurate version of what it purports to be.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that the final version of the official minutes from the May 15, 2017 End of Phase 2 meeting were produced at bates range ACAD_SECLIT_0000995– ACAD_SECLIT_0001012, as well as at bates range ACAD_SECLIT_0019793– ACAD_SECLIT_0019810, which was attached as Exhibit 18 to the Declaration of Peter Adams in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification [ECF No. 117-4].

**REQUEST FOR ADMISSION NO. 2:**

Admit that prior to the end of the Class Period You never Disclosed a complete copy of the final version of the official minutes of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the term "Disclosed," which Plaintiffs have defined only in the context of "information" and not in the context used herein, which appears to contemplate making a specific document public. Accordingly, Acadia will construe to the term "Disclosed" when used in reference to a document, to mean making that specific document public.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose (as defined in the foregoing objections) a copy of the final version of the official minutes from the May 15, 2017 End of Phase 2 meeting.

**INTERROGATORY NO. 4:**

If Your response to Request No. 2 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 4:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Because this Interrogatory relies on Request No. 2, Acadia also incorporates its specific objection to that Request. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia believes that no response to this Interrogatory is required based on its response to Request No. 2.

**REQUEST FOR ADMISSION NO. 3:**

Admit that prior to the end of the Class Period You never Disclosed a complete copy of any version or draft of the minutes of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to this Request as duplicative of Request No. 2. Acadia further objects to the use of the term "Disclosed," which Plaintiffs have defined only in the context of "information" and not in the context used herein, which appears to contemplate making a specific document public. Accordingly, Acadia will construe to the term "Disclosed" when used in reference to a document, to mean making that specific document public.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose (as defined in the foregoing objections) a copy of any version or draft of the minutes from the May 15, 2017 End of Phase 2 meeting.

**INTERROGATORY NO. 5:**

If Your response to Request No. 3 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 5:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Because this Interrogatory relies on Request No. 3, Acadia also incorporates its specific objection to that Request. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia believes that no response to this Interrogatory is required based on its response to Request No. 3.

**REQUEST FOR ADMISSION NO. 4:**

Admit that Harmony's design, as first submitted by Acadia to FDA on or before May 15, 2017, and at all times thereafter, was a randomized withdrawal trial design.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "randomized withdrawal trial design" as vague and ambiguous. Acadia will construe this phrase to mean a trial design that includes an open-label, stabilization phase with responders going on to a randomized, double-blind, withdrawal phase.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that on April 13, 2017, Acadia sent the FDA a Type B End of Phase 2 Meeting Briefing Package that included a draft protocol for study ACP-103-145 (the Harmony Study), which proposed a 12-week open-label, flexible dose (for the first four weeks) stabilization phase with responders going on to a 26-week randomized, double-blind, withdrawal phase. Acadia further admits that, during the May 15, 2017 End of Phase 2 meeting, the FDA agreed that the randomized withdrawal trial as described in the Meeting Briefing Package would be acceptable

as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis. Acadia further admits that the Harmony Study utilized the proposed-and-agreed-upon randomized withdrawal trial design.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, consistent with what is stated in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 (at ACAD_SECLIT_0001000), at or before the time of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA, FDA informed You, in words or substance, that FDA had "concerns with [Acadia's] proposal to use a randomized withdrawal trial to establish [pimavanserin's] efficacy" as a treatment for DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that prior to the May 15, 2017 End of Phase 2 meeting, as reflected at bates ACAD_SECLIT_0001000, the FDA informed Acadia that it had "concerns with [Acadia's] proposal to use a randomized withdrawal trial to establish [pimavanserin's] efficacy" in subjects suffering from hallucinations and delusions from dementia-related psychosis, but Acadia otherwise denies the Request because during the May 17, 2017 End of Phase 2 meeting, the FDA agreed that the randomized withdrawal trial as described in the Meeting Briefing Package would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis.

**REQUEST FOR ADMISSION NO. 6:**

Admit that, consistent with what is stated in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 (at ACAD_SECLIT_0001000), at or before the May 15, 2017 End of Phase 2 meeting between Acadia and FDA, the FDA, in words or substance, suggested that Acadia use an alternative design for Harmony instead of using a randomized withdrawal trial design to establish pimavanserin's efficacy as a treatment for DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that prior to the May 15, 2017 End of Phase 2 meeting, as reflected at bates ACAD_SECLIT_0001000, the FDA "suggest[ed] combining the proposed [Harmony] study with the postmarketing commitment (PMC) for a safety study in frail, elderly subjects," but Acadia otherwise denies the Request because during the May 17, 2017 End of Phase 2 meeting, the FDA agreed that the randomized withdrawal trial as described in the Meeting Briefing Package would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Acadia did not implement FDA's suggestion, referenced in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012                    (at ACAD_SECLIT_0001000), that Acadia use "an alternative" design for Harmony.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the Request because it assumes facts that have not been established. Namely, that by the end of

the May 17, 2017 End of Phase 2 meeting, the FDA maintained its initial suggestion that Acadia use "an alternative" study design and had not agreed that the Harmony Study, as described in the Meeting Briefing Package, would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis, which is contradicted by the document at bates ACAD_SECLIT_0000995–ACAD_SECLIT_0001012.

Subject to and without waiving the foregoing, Acadia responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 8:**

Admit that prior to the end the Class Period You never Disclosed in words or substance that FDA had concerns with Acadia's proposal to use a randomized withdrawal trial to establish pimavanserin's efficacy as a treatment for DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the Request because it assumes facts that have not been established. Namely, that by the end of the May 17, 2017 End of Phase 2 meeting, the FDA maintained its initial concerns with Acadia's trial design and had not agreed that the Harmony Study, as described in the Meeting Briefing Package, would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis, which is contradicted by the document at bates ACAD_SECLIT_0000995–ACAD_SECLIT_0001012.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose that the FDA initially expressed concerns with Acadia's proposal to use a randomized withdrawal trial to establish pimavanserin's efficacy as a treatment for DRP because by the end of the May 17, 2017 End of Phase 2 meeting, the FDA agreed that the randomized withdrawal trial, as described in the Meeting Briefing Package, would be acceptable as a well-controlled trial for

submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis. Accordingly, any such Disclosure would have misrepresented the FDA's position as documented in official minutes of the May 17, 2017 End of Phase 2 meeting.

**INTERROGATORY NO. 6:**

If Your response to Request No. 8 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 6:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Because this Interrogatory relies on Request No. 8, Acadia also incorporates its specific objection to that Request. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia believes that no response to this Interrogatory is required based on its response to Request No. 8.

**REQUEST FOR ADMISSION NO. 9:**

Admit that prior to the end of the Class Period You never Disclosed in words or substance that FDA had suggested that Acadia use an alternative to a randomized withdrawal trial to establish pimavanserin's efficacy as a treatment for DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the Request because it assumes facts that have not been established. Namely, that by the end of the May 17, 2017 End of Phase 2 meeting, the FDA maintained its initial suggestion that Acadia use "an alternative" study design to establish pimavanserin's efficacy as a treatment for DRP and had not agreed that the Harmony Study, as described in the

Meeting Briefing Package, would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis, which is contradicted by the document at bates ACAD_SECLIT_0000995–ACAD_SECLIT_0001012.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose that the FDA initially "suggest[ed] combining the proposed [Harmony] study with the postmarketing commitment (PMC) for a safety study in frail, elderly subjects" because by the end of the May 17, 2017 End of Phase 2 meeting, the FDA agreed that the randomized withdrawal trial as described in the Meeting Briefing Package would be acceptable as a well-controlled trial for submission of a sNDA for the indication of hallucinations and delusions associated with dementia-related psychosis. Accordingly, any such Disclosure would have misrepresented the FDA's position as documented in official minutes of the May 17, 2017 End of Phase 2 meeting.

**INTERROGATORY NO. 7:**

If Your response to Request No. 9 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 7:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Because this Interrogatory relies on Request No. 9, Acadia also incorporates its specific objection to that Request. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia believes that no response to this Interrogatory is required based on its response to Request No. 9.

**REQUEST FOR ADMISSION NO. 10:**

Admit that, consistent with what is stated in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 (at ACAD_SECLIT_0001000), at or before the time of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA, FDA informed You, in words or substance, that FDA had "agree[d]" to Harmony's "study population as long as subjects [we]re stratified by their current clinical diagnosis."

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document. Acadia further objects to the extent that Plaintiffs altered and truncated the quoted language in the document. The full sentence reads: "Yes, we agree with the proposed study population as long as subjects are stratified by their current clinical diagnosis (*as proposed*)." (emphasis added).

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected at ACAD_SECLIT_0001000, the FDA "agree[d] with the proposed study population as long as subjects are stratified by their current clinical diagnosis (as proposed)" in Acadia's End of Phase 2 Meeting Briefing Package.

**REQUEST FOR ADMISSION NO. 11:**

Admit that, consistent with what is stated in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 (at ACAD_SECLIT_0001000), at or before the time of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA, FDA informed You, in words or substance, that "[l]abeling will reflect the actual composition and response of patients enrolled in the [Harmony] study."

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the

phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012, the FDA informed Acadia in 2017 that it agreed with Acadia's proposed design and population for the Harmony Study and stated that, if the sNDA were accepted for filing and the FDA subsequently found the sNDA to be approvable, the labeling for pimavanserin as an approved treatment for DRP would reflect the actual composition and response of patients enrolled in the Harmony Study.

**REQUEST FOR ADMISSION NO. 12:**

Admit that, consistent with what is stated in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012 (at ACAD_SECLIT_0001000), at or before the time of the May 15, 2017 End of Phase 2 meeting between Acadia and FDA, FDA informed You, in words or substance, that any potential expanded labeling for pimavanserin as a treatment for DRP would reflect the actual composition and response of patients enrolled in the Harmony Study.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects that the Request is duplicative of Request Nos. 10 and 11. To the extent this Request differs from Request Nos. 10 and 11, by adding the phrase "any potential expanded labeling," it is vague and ambiguous because it appears to contemplate all future labeling, even if supported by a trial other than Harmony.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected in ACAD_SECLIT_0000995–ACAD_SECLIT_0001012, the FDA informed Acadia in 2017 that it agreed with Acadia's proposed design and population for the Harmony Study and stated that, if

the sNDA were accepted for filing and the FDA subsequently found the sNDA to be approvable, the labeling for pimavanserin as an approved treatment for DRP would reflect the actual composition and response of patients enrolled in the Harmony Study.

**REQUEST FOR ADMISSION NO. 13:**

Admit that prior to the end of the Class Period You never Disclosed, in words or substance, that FDA had informed You that labeling will reflect the actual composition and response of patients enrolled in the Harmony Study.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose the FDA's preliminary comments during the May 2017 End of Phase 2 meeting regarding what the labeling for pimavanserin as an approved treatment for DRP would potentially reflect as that meeting occurred more than three years before Acadia's submission of the sNDA, which the FDA accepted for filing in June 2020, and approximately four years before any discussion between Acadia and the FDA regarding labeling would have occurred, and as such, any such disclosure would have been premature and speculative given that Acadia and FDA never engaged in discussions about the content of any such label.  Except as expressly admitted, Acadia denies this Request.

**INTERROGATORY NO. 8:**

If Your response to Request No. 13 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 8:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this

Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory. Accordingly, at present and subject to a supplemental and/or amended response prior to the close of discovery, Acadia will construe this Interrogatory as seeking a non-exhaustive set of examples of such Disclosures that occurred prior to the end of the alleged class period.

Subject to and without waiving the foregoing, Acadia responds as follows: Beginning in Acadia's Q1 2016 10-Q filed on May 5, 2016, and in every quarterly and annual SEC filing thereafter through the end of the Class Period, Acadia disclosed, among other things, that "labeling . . . of pharmaceutical product candidates are subject to extensive regulation by the FDA and other regulatory authorities in the United States[.]" Those regulations, which are publicly available, set forth labeling requirements which include, among other things, "[m]ajor limitations of use (e.g., lack of effect in particular subsets of the population, or second line therapy status)." 21 C.F.R. § 201.57(a)(6).

**REQUEST FOR ADMISSION NO. 14:**

Admit that prior to the end of the Class Period You never Disclosed in words or substance that any potential expanded labeling for pimavanserin as a treatment for DRP would reflect the actual composition and response of patients enrolled in the Harmony Study.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects that the Request is duplicative of Request No. 13. To the extent this Request differs from Request No. 13, by adding the phrase "any potential expanded labeling," it is vague and ambiguous because it appears to contemplate all future labeling, even if supported by a trial other than Harmony.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose the FDA's preliminary comments during the

May 2017 End of Phase 2 meeting regarding what the labeling for pimavanserin as an approved treatment for DRP would potentially reflect as that meeting occurred more than three years before Acadia's submission of the sNDA, which the FDA accepted for filing in June 2020, and approximately four years before any discussion between Acadia and the FDA regarding labeling would have occurred, and as such, any such disclosure would have been premature and speculative given that Acadia and FDA never engaged in discussions about the content of any such label.  Except as expressly admitted, Acadia denies this Request.

**INTERROGATORY NO. 9:**

If Your response to Request No. 14 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 9:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory. Accordingly, at present and subject to a supplemental and/or amended response prior to the close of discovery, Acadia will construe this Interrogatory as seeking a non-exhaustive set of examples of such Disclosures that occurred prior to the end of the alleged class period.

Subject to and without waiving the foregoing, Acadia responds as follows: Beginning in Acadia's Q1 2016 10-Q filed on May 5, 2016, and in every quarterly and annual SEC filing thereafter through the end of the Class Period, Acadia disclosed, among other things, that "labeling . . . of pharmaceutical product candidates are subject to extensive regulation by the FDA and other regulatory authorities in the United States[.]" Those regulations, which are publicly available, set forth labeling requirements which include, among other things, "[m]ajor

limitations of use (e.g., lack of effect in particular subsets of the population, or second line therapy status)." 21 C.F.R. § 201.57(a)(6).

**REQUEST FOR ADMISSION NO. 15:**

Admit that ACAD_SECLIT_0001032–ACAD_SECLIT_0001055 is a true, correct, and complete copy of the final official version of the minutes of the March 16, 2020 pre-sNDA meeting between Acadia and FDA.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "true, correct, and complete" as vague and ambiguous, as the terms "true" and "correct" do not appear to have different meanings. Acadia will construe this phrase to mean that the document is a complete and accurate version of what it purports to be. Acadia further objects to the use of the phrase "final official version" as vague and ambiguous. Acadia will construe this phrase to mean "final version of the official minutes."

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that the final version of the official minutes from the March 16, 2020 pre-sNDA meeting between Acadia and FDA were produced at bates range ACAD_SECLIT_0001032–ACAD_SECLIT_0001055.

**REQUEST FOR ADMISSION NO. 16:**

Admit that, consistent with what is stated in ACAD_SECLIT_0001032–ACAD_SECLIT_0001055 (at ACAD_SECLIT_0001037), at the March 16, 2020 meeting between Acadia and FDA, FDA informed You, in words or substance, that "[w]hether the results of [Harmony] are persuasive and clinically significant enough to provide substantial evidence of effectiveness for the treatment of hallucinations and delusions associated with dementia-related psychosis will be a matter of review."

Cooley LLP
Attorneys at Law
San Diego

19

ACADIA'S OBJECTIONS & RESPONSES TO
PLAINTIFFS' COMBINED RFAs AND ROGS

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected at ACAD_SECLIT_0001037, the FDA stated that: "Whether the results of ACP-103-045 are persuasive and clinically significant enough to provide substantial evidence of effectiveness for the treatment of hallucinations and delusions associated with dementia-related psychosis will be a matter of review."

**REQUEST FOR ADMISSION NO. 17:**

Admit that prior to the end of the Class Period there was no existing drug, biologic medication or other treatment that had been approved by FDA for the treatment of hallucinations or delusions associated with non-Parkinson's Disease related DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "non-Parkinson's Disease related DRP" as vague and ambiguous. Acadia will construe this to mean any disease associated with DRP other than Parkinson's Disease.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, to the best of its current knowledge and belief, prior to the end of the Class Period the FDA had not approved a drug, biologic, or other therapy for the specific indication of treatment of hallucinations and/or delusions associated with subtypes of dementia, other than dementia associated with Parkinson's Disease.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ACADIA'S OBJECTIONS & RESPONSES TO PLAINTIFFS' COMBINED RFAS AND ROGS

**REQUEST FOR ADMISSION NO. 18:**

Admit that ACAD_SECLIT_0023439–ACAD_SECLIT_0023441 is a true, correct, and complete copy of an e-mail thread—which begins with an e-mail dated July 10, 2020 from FDA's Danbi Lee to Acadia's Teresa Brandt (copying Daryl DeKarske and Tiffany Farchione) with the subject line "Nuplazid supplements" and ends with an e-mail dated July 28, 2020 from Danbi Lee to Teresa Brandt (copying Daryl DeKarske and Tiffany Farchione) with the subject line "RE: Nuplazid supplements - updated email"—that You produced from the custodial e-mail files of then Acadia-employee Teresa Brandt.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "true, correct, and complete" as vague and ambiguous, as the terms "true" and "correct" do not appear to have different meanings. Acadia will construe this phrase to mean that the document is a complete and accurate version of what it purports to be.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that ACAD_SECLIT_0023439–ACAD_SECLIT_0023441 is an e-mail thread which begins with an e-mail dated July 10, 2020 from Danbi Lee to Teresa Brandt with the subject line "Nuplazid supplements" and ends with an e-mail dated July 28, 2020 from Danbi Lee to Teresa Brandt (copying Daryl DeKarske and Tiffany Farchione) with the subject line "RE: Nuplazid supplements - updated email," which was produced by Acadia from the custodial e-mail files of former employee Teresa Brandt. Acadia denies this Request to the extent it incorrectly describes the initial July 10, 2020 e-mail from Danbi Lee to Teresa Brandt as copying Daryl DeKarske and Tiffany Farchione.

**REQUEST FOR ADMISSION NO. 19:**

Admit that on or around July 17, 2020, as stated in ACAD_SECLIT_0023439– ACAD_SECLIT_0023441 (at ACAD_SECLIT_0023439– ACAD_SECLIT_0023440), FDA informed You that "a product receiving breakthrough therapy designation could be eligible for priority review if supported by clinical data at the time of the BLA, NDA, or efficacy supplement submission . . . . The guidance notes a qualifying criterion for priority review designation is demonstrating the potential to be a significant improvement in safety or effectiveness (e.g., evidence of safety and effectiveness in a new subpopulation). Based on a preliminary review of [Acadia's] submission, it is unclear if the clinical data demonstrate this potential."

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected at ACAD_SECLIT_0023439– ACAD_SECLIT_0023440, Danbi Lee referred Teresa Brandt to the publicly available industry guidance, which Lee summarized as follows: "As noted in the Guidance for Industry: Expedited Programs for Serious Conditions – Drugs and Biologics (May 2014), a product receiving breakthrough therapy designation **could** be eligible for priority review **if supported by clinical data** at the time of BLA, NDA, or efficacy supplement submission (emphasis added). The guidance notes a qualifying criterion for priority review designation is demonstrating the potential to be a significant improvement in safety or effectiveness (e.g., evidence of safety and effectiveness in a new subpopulation)." Acadia further admits that, consistent with this regulatory guidance, the FDA's grant of a breakthrough therapy designation for

DRP, and the FDA's decision to set a standard review period, Lee stated: "Based on a preliminary review of Acadia's submission, it is unclear if the clinical data demonstrate this potential."

**REQUEST FOR ADMISSION NO. 20:**

Admit that prior to the end of the Class Period You never Disclosed that on or around July 17, 2020, FDA had informed You, in words or substance, that, based on FDA's preliminary review of Acadia's sNDA submission, it was unclear if the sNDA's clinical data demonstrated the potential of pimavanserin to be a significant improvement in safety or effectiveness (e.g., through evidence of safety and effectiveness in a new subpopulation) for the treatment of DRP.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Subject to and without waiving the foregoing, Acadia responds as follows: Denied.

**INTERROGATORY NO. 10:**

If Your response to Request No. 20 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 10:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory. Accordingly, at present and subject to a supplemental and/or amended response prior to the close of discovery, Acadia will construe this Interrogatory as seeking a non-exhaustive set of examples of such Disclosures that occurred prior to the end of the alleged class period.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia incorporates its response to Request No. 19 as if fully set forth herein. Acadia

further responds that publicly available FDA guidance, available at https://www.fda.gov/media/86377/download at p. 24–25, confirms that a qualifying criterion for priority review designation is demonstrating the potential to be a significant improvement in safety or effectiveness (e.g., evidence of safety and effectiveness in a new subpopulation). On July 20, 2020, Acadia issued a press release titled, "ACADIA Pharmaceuticals Announces U.S. FDA Accepted for Filing the Supplemental New Drug Application for NUPLAZID® (pimavanserin) for the Treatment of Hallucinations and Delusions Associated with Dementia-Related Psychosis," which disclosed that the sNDA received standard review, which necessarily confirmed that the sNDA did not meet the criterion for priority review as determined by FDA guidance.

**REQUEST FOR ADMISSION NO. 21:**

Admit that on or around July 28, 2020, and consistent with what is stated in ACAD_SECLIT_0023439–ACAD_SECLIT_0023441                                            (at ACAD_SECLIT_0023439), FDA informed You that the sNDA "did not receive priority review designation because, based on [FDA's] initial review, [Acadia's] application d[id] not appear to include adequate evidence to indicate that pimavanserin would provide a significant improvement in safety or effectiveness in the treatment of dementia-related psychosis."

**RESPONSE TO REQUEST FOR ADMISSION NO. 21:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "in words or substance" as vague and ambiguous, particularly in the context of a statement quoted from a specific document.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that, as reflected at ACAD_SECLIT_0023439–ACAD_SECLIT_0023440, Danbi Lee referred Teresa Brandt to the publicly available industry guidance, which Lee summarized as follows: "As noted in the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ACADIA'S OBJECTIONS & RESPONSES TO PLAINTIFFS' COMBINED RFAS AND ROGS

Guidance for Industry: Expedited Programs for Serious Conditions – Drugs and Biologics (May 2014), a product receiving breakthrough therapy designation *could* be eligible for priority review *if supported by clinical data* at the time of BLA, NDA, or efficacy supplement submission (emphasis added). The guidance notes a qualifying criterion for priority review designation is demonstrating the potential to be a significant improvement in safety or effectiveness (e.g., evidence of safety and effectiveness in a new subpopulation)." Acadia further admits that, consistent with this guidance, the FDA's grant of a breakthrough therapy designation for DRP, and the FDA's decision to set a standard review period, Lee stated: "Your application did not receive priority review designation because, based on our initial review, your application does not appear to include adequate evidence to indicate that pimavanserin would provide a significant improvement in safety or effectiveness in the treatment of dementia-related psychosis."

**REQUEST FOR ADMISSION NO. 22:**

Admit that prior to the end of the Class Period You never Disclosed in words or substance that on or around July 28, 2020 FDA had informed You that the sNDA did not receive priority review designation because, based on FDA's initial review, Acadia's application did not appear to include adequate evidence to indicate that pimavanserin would provide a significant improvement in safety or effectiveness in the treatment of dementia-related psychosis.

**RESPONSE TO REQUEST FOR ADMISSION NO. 22:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the

Subject to and without waiving the foregoing, Acadia responds as follows: Denied.

**INTERROGATORY NO. 11:**

If Your response to Request No. 22 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 11:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory. Accordingly, at present and subject to a supplemental and/or amended response prior to the close of discovery, Acadia will construe this Interrogatory as seeking a non-exhaustive set of examples of such Disclosures that occurred prior to the end of the alleged class period.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia incorporates its response to Request No. 19 as if fully set forth herein. Acadia further responds that publicly available FDA guidance, available at https://www.fda.gov/media/86377/download at p. 24–25, confirms that a qualifying criterion for priority review designation is demonstrating the potential to be a significant improvement in safety or effectiveness (e.g., evidence of safety and effectiveness in a new subpopulation). On July 20, 2020, Acadia issued a press release titled, "ACADIA Pharmaceuticals Announces U.S. FDA Accepted for Filing the Supplemental New Drug Application for NUPLAZID® (pimavanserin) for the Treatment of Hallucinations and Delusions Associated with Dementia-Related Psychosis," which disclosed that the sNDA received standard review, which necessarily confirmed that the sNDA did not meet the criterion for priority review as determined by FDA guidance.

**REQUEST FOR ADMISSION NO. 23:**

Admit that ACAD_SECLIT_0001088–ACAD_SECLIT_0001093 is a true, correct, and complete copy of the Complete Response Letter.

**RESPONSE TO REQUEST FOR ADMISSION NO. 23:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the

phrase "true, correct, and complete" as vague and ambiguous, as the terms "true" and "correct" do not appear to have different meanings. Acadia will construe this phrase to mean that the document is a complete and accurate version of what it purports to be.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that the Complete Response Letter was produced at bates range ACAD_SECLIT_0001088–ACAD_SECLIT_0001093.

**REQUEST FOR ADMISSION NO. 24:**

Admit that, consistent with what is stated in ACAD_SECLIT_0001088–ACAD_SECLIT_0001093 (at ACAD_SECLIT_0001088), the Complete Response Letter states that "[a]lthough [Harmony] was not powered to demonstrate an effect in the subgroups of dementia included, [FDA] had advised [Acadia] during development that labeling would reflect the actual composition and response of the subjects enrolled in the trial."

**RESPONSE TO REQUEST FOR ADMISSION NO. 24:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that the Complete Response Letter states, in part, "Although Study 045 was not powered to demonstrate an effect in the subgroups of dementia included, we had advised you during development that labeling would reflect the actual composition and response of the subjects enrolled in the trial."

**REQUEST FOR ADMISSION NO. 25:**

Admit that You have never Disclosed a complete copy of the Complete Response Letter, if at all, until after February 2, 2023.

**RESPONSE TO REQUEST FOR ADMISSION NO. 25:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Acadia further objects to the use of the

term "Disclosed," which Plaintiffs have defined only in the context of "information" and not in the context used herein, which appears to contemplate making a specific document public. Accordingly, Acadia will construe to the term "Disclosed" when used in reference to a document, to mean making that specific document public.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia admits that it did not Disclose (as defined in the foregoing objections) a copy of the Complete Response Letter prior to February 2, 2023.

**INTERROGATORY NO. 12:**

If Your response to Request No. 25 above is not an unqualified admission, Identify any such purported Disclosure.

**RESPONSE TO INTERROGATORY NO. 12:**

Acadia incorporates its General Responses and Objections to the Definitions and Instructions as if fully set forth herein. Because this Interrogatory relies on Request No. 25, Acadia also incorporates its specific objection to that Request. Acadia further objects to the use of the phrase "any such" as vague and ambiguous. To the extent Plaintiffs intend for this Interrogatory to request "all" such Disclosures, this Interrogatory is a premature contention interrogatory.

Subject to and without waiving the foregoing, Acadia responds as follows: Acadia believes that no response to this Interrogatory is required based on its response to Request No. 25.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ACADIA'S OBJECTIONS & RESPONSES TO
PLAINTIFFS' COMBINED RFAS AND ROGS

Dated:        December 6, 2023            COOLEY LLP

By: */s/Peter M. Adams*
  Peter M. Adams

Attorneys for Defendants
Acadia Pharmaceuticals Inc., Stephen R. Davis, and Srdjan (Serge) R. Stankovic

## VERIFICATION

I, Austin Kim, declare:

I am the Executive Vice President, General Counsel, and Secretary of Acadia Pharmaceuticals, Inc. ("Acadia"), a Defendant in the above-captioned action. I am authorized to make this verification on behalf of Acadia.

I have reviewed the foregoing responses by Acadia to Plaintiffs' Combined First Set of Request for Admission and Second Set of Interrogatories and know its contents. The matters stated therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed at San Diego, California on this 7th day of December, 2023.

_Austin Kim_

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

30

ACADIA'S OBJECTIONS & RESPONSES TO
PLAINTIFFS' COMBINED RFAS AND ROGS

## PROOF OF SERVICE

I, the undersigned, declare that I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to this action. My business address is 10265 Science Center Drive, San Diego, California 92121.

On December 6, 2023, I served true and correct copies of the foregoing document on counsel for Plaintiffs via electronic mail to the email addresses identified below:

| SCOTT+SCOTT ATTORNEYS AT LAW LLP<br>Jacob B. Lieberman<br>jlieberman@scott-scott.com<br>John T. Jasnoch<br>jjasnoch@scott-scott.com<br>Marc J. Greco<br>mgreco@scott-scott.com<br>William C. Fredericks<br>wfredericks@scott-scott.com | LEVI & KORSINSKY, LLP<br>Shannon L. Hopkins<br>shopkins@zlk.com<br>Gregory M. Potrepka<br>gpotrepka@zlk.com<br>Adam Marc Apton<br>aapton@zlk.com<br>Adam C. McCall<br>amccall@zlk.com |
| --- | --- |

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed at San Diego, California on this 6th day of December, 2023.

*/s/ Heather Speers*
Heather Speers

PROOF OF SERVICE