**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
John T. Jasnoch (SBN 281605)
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com

*Counsel for Lead Plaintiff*
*City of Birmingham Retirement and*
*Relief System and the Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM and OHIO CARPENTERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and SRDJAN (SERGE) R. STANKOVIC,<br><br>Defendants. | Case No. 3:21-cv-00762-WQH-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'** *EX PARTE* **MOTION FOR LEAVE TO SUBSTITUTE EXPERT WITNESS**<br><br>Judge:  Hon. Michael S. Berg<br>Courtroom:  2C |

Class Representatives Plaintiff City of Birmingham Retirement and Relief System and Ohio Carpenters' Pension Fund (together, "Plaintiffs"), on behalf of the certified Class, hereby move the Court for an order permitting them to substitute a new expert for one of Plaintiffs' previously disclosed experts, Dr. David Feigal ("Dr. Feigal"). As stated herein, Plaintiffs only yesterday (June 16, 2025) became aware of Dr. Feigal's inability to proceed in this case and hereby swiftly move the Court for permission to substitute a new expert.[1]

## INTRODUCTION AND BACKGROUND

This case has gone through class certification, is heading towards summary judgment, and is in the final days of expert discovery. As particular background to this motion:

- Plaintiffs disclosed their opening experts on September 4, 2024. *See* Declaration of Amanda F. Lawrence ("Lawrence Decl.") ¶2.

- That list included Dr. Feigal, a doctor with decades of experience working with the Food and Drug Administration ("FDA"). *Id.*

- On February 13, 2025, Plaintiffs submitted their opening expert reports, including the expert report of Dr. Feigal (the "Feigal Report"). *Id.* ¶3.

- The Feigal Report offered his expert opinions on both communications between FDA and Defendants and the "probability of success" of the supplemental new drug application for pimavanserin at issue in this case at various points during the Class Period. *Id.*

- On March 27, 2025, Defendants submitted their rebuttal expert reports. Two of those reports (those of Dr. Andreason and Dr. Breder) devoted the vast majority of their opinions to rebutting the Feigal Report.[2] *Id.* ¶4.

- The Parties worked together to schedule the nine expert depositions

---

[1] As discussed further below, Plaintiffs have not yet identified the new expert but are moving expeditiously to do so.

[2] Another of Defendants' experts, Dr. Gibbons, devoted a few pages of his report to some aspects of the Feigal Report. Lawrence Decl. ¶4.

(Plaintiffs' four experts and Defendants' five experts) within a compressed time schedule. *Id.* ¶5.

- Given all counsels' schedules and the travel schedule of Dr. Feigal, the Parties agreed to hold his deposition on June 20, 2025, near Los Angeles, California where he resides. *Id.*[3]

- Dr. Andreason and Dr. Breder were deposed on May 15 and May 22, 2025, respectively in Washington, DC. *Id.* ¶6.

Over this time period, Plaintiffs' counsel was working with Dr. Feigal both through the deposition scheduling process and as the actual depositions proceeded. *Id.* ¶7.   In particular, counsel for Plaintiffs met multiple times with Dr. Feigal, virtually, for preparation sessions during the week of June 9 and had an in-person preparation session planned for Thursday, June 19, 2025. *Id.* ¶8.  However, over the recent weekend, Dr. Feigal began to indicate that he was not going to be available for anything further in this case (or for any case, for that matter). *Id.* ¶9.  Over the weekend, Plaintiffs' counsel exchanged emails with Dr. Feigal, but, ultimately, on Monday, June 16, 2025, he informed counsel for Plaintiffs that, given the situation in Los Angeles, he was unplugging (i.e., removing himself from internet, telephone, and any form of contact) for an unknown period of time and would not be available for deposition or trial. *Id.* ¶10.  Plaintiffs' counsel had a scheduled Zoom preparation session with Dr. Feigal for Monday, June 16, 2025, at 3:00 p.m. EDT and, although counsel appeared and waited, he did not join the Zoom, thus triggering the need for this motion. *Id.* ¶11.  While finalizing the motion, Dr. Feigal did send an email to Plaintiffs' counsel stating that he may be willing to sit for a deposition at a later undefined date under certain circumstances.  Those circumstances, however, would render a deposition and certainly appearance at trial impossible.  And, after counsel

---

[3]   The close of expert discovery was on June 13, 2025, but the Parties were unable to find a date that worked prior to then for all persons involved and thus agreed on the limited extension for Dr. Feigal's deposition on June 20.  Lawrence Decl. ¶5.

2

21cv00762

for Plaintiffs attempted to respond to him (via email and telephone) after this email, Dr. Feigal has not responded.[4] *Id.* ¶13. Counsel for Plaintiffs contacted counsel for Defendants the very next day (on Tuesday, June 17, 2025) and quickly filed this motion seeking relief. *Id.* ¶12.

These circumstances make it clear that, due to no fault of Plaintiffs, they are left without an expert to opine on FDA matters central to this case (that are the subject of more than two of Defendants' expert reports).[5] Therefore, granting a motion for substitution is both warranted and necessary here.

## LEGAL STANDARDS

### I.    STANDARD FOR *EX PARTE* MOTIONS

A court may grant *ex parte* relief upon a showing of good cause or irreparable injury to the moving party. *Walpert v. Solar Integrated Roofing Corp.*, 2025 WL 863474, at *1 (S.D. Cal. Mar. 19, 2025). "Good cause exists where the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures, and the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.*

### II.    STANDARD FOR SUBSTITUTION OF AN EXPERT WITNESS

A party seeking to substitute an expert witness after the deadline provided in a scheduling order may do so upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4); *see Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015). Under Rule 16(b), the court's "good cause" inquiry focuses primarily on the diligence of the party seeking substitution. *Fid.*

---

[4]    Plaintiffs have a string of emails that make this clear and are willing to present them to the Court for *in camera* review if requested. Given their sensitive and privileged nature, however, they are not attached to the Lawrence Declaration.

[5]    It should be noted that Dr. Feigal has a long career of providing expert testimony and has sat for depositions before many times. There was no reason to believe this case would be any different.

3

21cv00762

*Nat'l Fin., Inc.*, 308 F.R.D. at 652 (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992)).[6]  The existence or degree of prejudice to the party opposing modification of the pretrial schedule is a secondary consideration.  *See Landes*, 2013 WL 6859837, at *2.

An inflexible adherence to a scheduling order that may result in an outcome-determinative effect is "undesirable," and "[a] scheduling order which results in the exclusion of evidence is a drastic sanction."  *Id.* at *3 (citation modified) (quoting *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011)); *e.g.*, *Payless ShoeSource Worldwide, Inc. v. Target Corp.*, 2007 WL 4241850, at *3 (D. Kan. Nov. 28, 2007) (permitting substitution of expert where party would otherwise "be unable to present expert testimony regarding damages").

Accordingly, district courts "should generally allow amendments of pre-trial orders provided three criteria are met: (1) no substantial injury will be occasioned to the opposing party, (2) refusal to allow the amendment might result in injustice to the movant, and (3) the inconvenience to the court is slight."  *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996) (citation modified); *Landes*, 2013 WL 6859837, at *3.

## ARGUMENT

Plaintiffs here seek both *ex parte* relief (in this motion) and substitution of one of their experts, Dr. Feigal.[7]  As stated herein, they meet the good cause standards for each given the timeline discussed above and the hardships placed on Plaintiffs.

---

[6]   This standard is much lower than the "manifest injustice" standard that applies when a party seeks to substitute an expert witness on the eve of trial, after the final pretrial conference.  *See* Fed. R. Civ. P. 16(e); *Landes v. Skil Power Tools*, 2013 WL 6859837, at *2–3 (E.D. Cal. Dec. 30, 2013).

[7]   Plaintiffs do not yet have the name of the expert that they will substitute for Dr. Feigal as they are working on that currently.  However, Plaintiffs wanted to bring this motion as soon as possible to the Court's attention.

## I.    *EX PARTE* RELIEF IS APPROPRIATE

To begin with, "good cause" exists for *ex parte* relief here.  At present, Dr. Feigal's deposition is scheduled for Friday, June 20, 2025, making it impossible for Plaintiffs to be heard prior to his deposition if this motion were filed as a noticed motion. *See Walpert*, 2025 WL 863474, at *1.  The events that precipitated the filing of this motion (described above at pp. 2-3) were not of Plaintiffs' own causing, but were unanticipated developments outside of Plaintiffs' control.  *See id.  Ex parte* relief is accordingly appropriate.  Furthermore, Plaintiffs have complied with the local rules and informed counsel for Defendants of this filing.  Lawrence Decl. ¶12.

## II.    PLAINTIFFS WERE DILIGENT IN MOVING FOR SUBSTITUTION

The first—and most crucial—factor in considering whether good cause exists to permit a party to substitute an expert is "the diligence of the party seeking the amendment" to the scheduling order. *United States v. J-M Mfg. Co., Inc.*, 2018 WL 11349905, at *2 (C.D. Cal. Apr. 23, 2018).  In determining whether the movant acted diligently, courts have considered the speed at which the movant sought to replace the expert, the movant's efforts to keep the court and the opposing party apprised of the substitution, and the movant's willingness to expedite briefing on the matter. *See id.* at *3; *see also Landes*, 2013 WL 6859837, at *3 (concluding that the plaintiff exercised reasonable diligence based on plaintiff's representation that he "beg[a]n searching for a new expert witness and conferring with [d]efendants immediately upon learning that [the withdrawn expert] would no longer adhere to his agreement with [p]laintiff").  Plaintiffs meet all those factors here.

Plaintiffs have not acted with even a scintilla of delay in bringing this to the Court's and Defendants' attention.  Indeed:

- Plaintiffs' counsel first started to question Dr. Feigal's willingness to sit for a deposition on Sunday, June 15, 2025.  Lawrence Decl. ¶9.
- On Monday, June 16, 2025, Dr. Feigal made it clear he was unplugging and would be entirely unavailable for any aspects of the case. *Id.* ¶10.

5

21cv00762

- Up until that point, Plaintiffs' counsel had been working with Dr. Feigal in anticipation of his deposition without any concerns. *Id.* ¶7. Indeed, Dr. Feigal has a decorated resume with much experience sitting for depositions.

- Plaintiffs immediately notified Defendants and filed this motion (within one day of Dr. Feigal removing himself).

- Plaintiffs are moving quickly to identify the substitute expert and will submit to an expedited schedule for that expert.

Under these circumstances, courts routinely grant similar motions to substitute a new expert and have found "good cause" to exist when a party's expert is unwilling to testify at trial or is uncooperative. *See, e.g.*, *Estate of Clifford v. Placer Cnty.*, 2018 WL 746475, at *2 (E.D. Cal. Feb. 6, 2018); *Welles v. Turner Entm't Co.*, 2009 WL 10672516, at *1–3 (C.D. Cal. Aug. 13, 2009); *Belmont Corp. v. Shell Oil Co.*, 1998 WL 242686, at *1–2 (N.D. Cal. May 12, 1998); *see also Jung v. Neschis*, 2007 WL 5256966, at *4, *16–17 (S.D.N.Y. Oct. 23, 2007) (finding good cause to extend expert discovery deadline where party sought to introduce substitute expert because original expert developed Alzheimer's disease during course of litigation); *Pierce v. Fremar, LLC*, 2010 WL 5172883, at *1 (D.S.D. Dec. 14, 2010) (concluding that expert's abrupt refusal to testify because he "no longer wished to be an expert witness" was not within the moving party's reasonable control and constituted good cause for substitution); *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, 2006 WL 3836137, at *3 (D. Minn. Dec. 22, 2006) (granting motion to substitute where original expert declined to continue for personal reasons but imposing limitations on new expert's testimony to mitigate prejudice).

Therefore, Plaintiffs have adequately demonstrated their diligence here and good cause exists to grant the motion.

21cv00762

### III.    THE CLASS WOULD BE SIGNIFICANTLY PREJUDICED ABSENT SUBSTITUTION

Plaintiffs and the certified Class would suffer significant harm if the requested relief were denied.  In fact, the prejudice here would be substantial and potentially irreparable.  As stated above, Dr. Feigal offers opinions about the communications between FDA and Defendants, as well as the probability of success of the supplemental new drug application at issue in this case.  Both of these are central issues.  Furthermore, Defendants have now submitted two expert reports responding to each of these topics and, absent substitution, those reports would be unrefuted.  In short, if Plaintiffs are precluded from presenting competent expert testimony on these issues, Plaintiffs will suffer substantial prejudice.  *See J-M Mfg. Co., Inc.*, 2018 WL 11349905, at *4 (concluding "the potential negative effect on [the movant] is undeniable" where, absent substitution, the movant would have no expert to oppose the other side's expert on a key component of the damages analysis); *Landes*, 2013 WL 6859837, at *3, 5 (granting the motion to substitute, partly "[b]ecause . . . if plaintiff were unable to present expert testimony regarding [part of a dispositive issue] as it relates to the product in question, he may be severely prejudiced").

Denying substitution would be highly prejudicial to the Class, who should not have to suffer for Dr. Feigal's unforeseen circumstances.

### IV.    THERE WILL BE NO UNDUE PREJUDICE TO DEFENDANTS

"Although the existence of prejudice to the party opposing modification may also be considered" in determining whether to allow substitution, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *United States ex rel. Agate Steel, Inc. v. Jaynes Corp.*, 2015 WL 1546717, at *1 (D. Nev. Apr. 6, 2015) (citation modified).  Thus, Plaintiffs respectfully submit that because they have established their diligence in seeking substitution, the inquiry should end there.

However, even considering any alleged prejudice to Defendants caused by substitution, that prejudice would be slight.  Under the operative scheduling order,

21cv00762

summary judgment and *Daubert* motions are not due until August 1, 2025, and the final pretrial conference is not until February 20, 2026.  ECF No. 174 ¶¶5, 12.  Thus, Defendants will have enough time to respond to any new expert Plaintiffs designate to replace Dr. Feigal without materially impairing the deadlines in place. Alternatively, Plaintiffs are willing to work with Defendants should they request a modest extension of the August 1 deadlines.

Expert witness substitution has been allowed in cases with less time before trial was scheduled to start.  *See, e.g.*, *J-M Mfg. Co.*, 2018 WL 11349905, at \*3–4 (prejudice to opposing party "not substantial" where expert was substituted six months before trial).  By contrast, prejudice warranting denial of substitution has been found only in extreme circumstances not present here, such as where the movant sought substitution three months before the final pretrial conference, after "all discovery ha[d] been closed" for four years, and "after *Daubert* rulings and multiple orders on summary judgment."  *Fid. Nat'l Fin.*, 308 F.R.D. at 655.

More importantly, however, Plaintiffs are aware that "the purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts."  *Jones v. Nat'l R.R. Passenger Corp.*, 2022 WL 689000, at \*3 (N.D. Cal. Feb. 23, 2022) (citation modified).  That is all Plaintiffs seek here—an expert to opine on the topics in Dr. Feigal's report.  "[T]o minimize the risk of prejudice to Defendants," Plaintiffs intend to "limit the substitute expert's testimony to the subject matter covered in [Dr. Feigal's] report."  *Id.*[8]  Such a limitation—which courts routinely permit, *see, e.g.*, *Jaynes Corp.*, 2015 WL 1546717, at \*2; *Chavez-Herrera v. Shamrock Foods Co.*, 2022 WL 20622332, at \*2

---

[8]  It would, of course, "not [be] appropriate . . . to mandate that the new expert 'rubber-stamp' the expert report previously provided" by Dr. Feigal—and Plaintiffs are not suggesting such—but courts have found it "reasonable to limit the new expert to findings that are substantially similar to those presented by" Dr. Feigal.  *See Jaynes Corp.*, 2015 WL 1546717, at \*2.

21cv00762

(D. Nev. Dec. 27, 2022)—minimizes any prejudice Defendants may claim from the substitution.

Finally, any alleged prejudice needs to be weighed against the extreme hardship that would be placed on the Class absent substitution.  Simply put: "[t]he purpose of the Federal Rules of Civil Procedure is to make a trial less a game of blind man's bluff and more a fair contest.  If a party's expert indicates that he is unwilling to testify and the court denies that party's request to substitute a new expert, the contest is no longer fair."  *Pierce*, 2010 WL 5172883, at *2 (citation modified).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for leave to substitute an expert witness for Dr. Feigal.

DATED:  June 17, 2025

Respectfully submitted,

SCOTT+SCOTT
ATTORNEYS AT LAW, LLP

s/ Amanda F. Lawrence
Amanda F. Lawrence (pro hac vice)
Jacob B. Lieberman (pro hac vice)
Jessica M. Casey (pro hac vice)
156 South Main Street
P.O. Box 192
Colchester, CT 06413
Telephone: (860) 537-5537
Facsimile:  (860) 537-4432
alawrence@scott-scott.com
jlieberman@scott-scott.com
jcasey@scott-scott.com

William C. Fredericks (pro hac vice)
Donald A. Broggi (pro hac vice)
Marc J. Greco (pro hac vice)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334

9

21cv00762

wfredericks@scott-scott.com
dbroggi@scott-scott.com
mgreco@scott-scott.com

John T. Jasnoch (SBN 281605)
600 W. Broadway, Suite 3300
San Diego, CA  92101
Telephone: (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com
*Counsel for Lead Plaintiff City of Birmingham Retirement and Relief System and the Class*

**LEVI & KORSINSKY, LLP**
Shannon L. Hopkins (*pro hac vice*)
Gregory M. Potrepka (*pro hac vice*)
P. Cole von Richthofen (*pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
shopkins@zlk.com
gpotrepka@zlk.com
cvrichthofen@zlk.com

Adam M. Apton (SBN 316506)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: (415) 273-1671
aapton@zlk.com

*Attorneys for Additional Plaintiff Ohio Carpenters' Pension Fund*

10

21cv00762

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

s/ Amanda F. Lawrence
Amanda F. Lawrence

21cv00762