COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
MATTHEW D. MARTINEZ (333932)
(mmartinez@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

CHRISTOPHER B. DURBIN (218611)
(cdurbin@cooley.com)
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
Telephone:  +1 206 452 8700
Facsimile:   +1 206 452 8800

Attorneys for Defendants
Acadia Pharmaceuticals Inc., Stephen R.
Davis, and Ana Stankovic, as Special Personal
Representative of the Estate of Srdjan (Serge)
Stankovic

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM AND OHIO CARPENTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and ANA STANKOVIC, as Special Personal Representative of the Estate of Srdjan (Serge) Stankovic<br><br>Defendants. | Case No. 3:21-CV-00762-WQH-MSB<br><br>CLASS ACTION<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR LEAVE TO SUBSTITUTE EXPERT WITNESS**<br><br>Judge: Hon. Michael S. Berg<br>Courtroom:  2C |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTS ....................................................................................................................... 2

III.  LEGAL STANDARD ............................................................................................... 5

IV.   ARGUMENT ............................................................................................................ 5

      A.    Plaintiffs' Proffered Reasons for Substitution Are Insufficient. .......... 5

      B.    Permitting Substitution Would Unfairly Prejudice Defendants. .......... 8

      C.    Dr. Feigal Should Be Compelled To Testify. ....................................... 9

V.    CONCLUSION ......................................................................................................... 9

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hopkins v. Inegon Gen. Ins. Corp.*,
2023 WL 2711664 (W.D. Wash. Mar. 30, 2023)......................................... 7, 8, 9

*Apple Inc. v. Samsung Elecs. Co.*,
306 F.R.D 234 (N.D. Cal. 2015) ...................................................................... 6

*Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*,
2006 WL 3836137 (D. Minn. Dec. 22, 2006) ...................................................7

*Estate of Clifford v. Placer Cnty.*,
2018 WL 746475 (E.D. Cal. Feb. 6, 2018) .......................................................8

*Commonwealth Sci. & Indust. Rsch. Organisation v. Buffalo Tech. (USA)*,
2009 WL 260953 (E.D. Tex. Feb. 3, 2009)........................................................7

*Crandall v. Hartford Cas. Ins. Co.*,
2012 WL 6086598 (D. Idaho Dec. 6, 2012)..................................................7, 8

*Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*,
308 F.R.D. 649 (S.D. Cal. 2015)...............................................................5, 6, 9

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ......................................................................5, 8

*Jung v. Neschis*,
2007 WL 5256966 (S.D.N.Y. Oct. 23, 2007) ...................................................7

*Morales v. Palomar Health*,
2016 WL 3763070 (S.D. Cal. July 14, 2016)...........................................1, 7, 8, 9

*Park v. CAS Enters., Inc.*,
2009 WL 4057888 (S.D. Cal. Nov. 19, 2009) ..................................................2

*Pierce v. Fremar, LLC*,
2010 WL 5172883 (D. S.D. Dec. 14, 2010).......................................................7

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

-ii-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. J-M Mfg. Co., Inc.,*
2018 WL 11349905 (C.D. Cal. Apr. 23, 2018)......................................................7

*United States v. Jaynes Corp.,*
2015 WL 1546717 (D. Nev. Apr. 6, 2015) ...........................................................2

*Updike v. Am. Honda Motor Co.,*
2024 WL 4465684 (D. Ariz. Oct. 10, 2024) .............................................5, 6, 8, 9

*Welles v. Turner Entm't Co.,*
2009 WL 10672516 (C.D. Cal. Aug. 13, 2009)......................................................7

**Rules & Other Authorities**

Fed. R. Civ. Proc.
16(b)......................................................................................................................1, 5
26(a)(2)(B) ...............................................................................................................4
26(b)(4)(C)...............................................................................................................4

ABC7, "Crowds Clash with Federal Agents After Dozens Detained in
ICE Raids Across LA" (June 6, 2025) ....................................................................6

-iii-

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## I.    INTRODUCTION

The Court should reject Plaintiffs' desperate, eleventh-hour gambit to replace an expert witness who is unwilling to defend his opinions under oath.[1] More than nine months ago, they selected Dr. Feigal—a witness with a "long career of providing expert testimony" and dozens of matters in the past five years alone—to serve as their regulatory expert in this case. For months, they worked with Dr. Feigal on his opening expert report. Strangely, Dr. Feigal did not submit a reply report, even though all three of Plaintiffs' other experts did. And now, after Dr. Feigal refused to sit for his deposition last week, Plaintiffs ask this Court for a do-over. They want to replace Dr. Feigal with a new expert because Dr. Feigal is supposedly so troubled by the "elevated situation in Los Angeles" that he has cut-off all communication with the outside world and refuses "to have anything to do with this matter or *any* court matter at all." But Dr. Feigal's cold feet (or Plaintiffs' buyer's remorse) is not enough to justify the extraordinary relief Plaintiffs seek.

***First***, Plaintiffs have not shown the "good cause" required to justify substitution under Rule 16(b). Their proffered "reasons for seeking" substitution are threadbare and suspect, and suggest, at most, that Dr. Feigal is merely *unwilling* rather than *unable* to continue serving as an expert witness. This is insufficient and the Court need go no further in its analysis to deny Plaintiffs' Motion. *See Morales v. Palomar Health*, 2016 WL 3763070, at *2 (S.D. Cal. July 14, 2016) ("unsupported assertion of 'pressing time commitments' does not render [expert] 'unavailable' within the meaning of the law such that she must be replaced").

***Second***, the prejudice to Defendants of allowing substitution at this late stage is substantial and self-evident. Tellingly, Plaintiffs are not proposing a new expert to endorse Dr. Feigal's opening report. Instead, they want a *new* expert to "opine on *the*

---

[1] As explained during the Parties' teleconference with the Court on June 18th, Defendants agreed not to proceed with Dr. Feigal's deposition on the scheduled date of June 20th. Because the exigency that led Plaintiffs to file their Motion *ex parte* no longer exists, Defendants do not address the standards for granting *ex parte* relief.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

*topics* in Dr. Feigal's report." But substitution "is not an opportunity to designate a better expert," *United States v. Jaynes Corp.*, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015), which is precisely what Plaintiffs are attempting here. Moreover, they offer no satisfactory explanation (because none exists) as to how Dr. Feigal could be replaced without effectively re-starting expert discovery. Defendants have already spent millions of dollars on expert discovery over the past 10 months. Giving Plaintiffs a "do-over" now would add millions more—and inevitably require another substantial extension of the case schedule, postponing summary judgment and trial.

For these reasons and those below, the Court should deny Plaintiffs' Motion and order Dr. Feigal to sit for deposition and provide trial testimony, if necessary.[2]

## II.    FACTS

On September 4, 2024, Plaintiffs disclosed four expert witnesses: (i) Steven P. Feinstein, Ph.D. (loss causation and damages); (ii) David B. Madigan, Ph.D. (biostatistics); (iii) Lon S. Schneider, M.D. (clinical); and (iv) David M. Feigal, M.D. (regulatory). (*See* Declaration of Christopher B. Durbin ("Durbin Decl.") ¶ 2.) At the time of Plaintiffs' disclosures, expert discovery was set to close January 20, 2025, but was later extended to May 16, 2025. (Dkt. 145, 166.) In early January 2025— after presumably working on their experts' reports for at least three months— Plaintiffs requested a further extension of the expert deadlines because two of their experts (Drs. Feigal and Schneider) were purportedly "affected by the recent wildfires in Los Angeles." (*See* Durbin Decl. ¶ 3.) Defendants agreed to the requested extension, which the Court granted on February 3, 2025. (Dkt. 174.)

On February 13, 2025, Plaintiffs served four opening expert reports, including Dr. Feigal's. (Durbin Decl. ¶ 4.) In his report, among other things, Dr. Feigal (1)

---

[2] If the Court does not deny the Motion outright, it should order Plaintiffs to supplement the evidentiary record—including with testimony from Dr. Feigal himself (via subpoena if necessary)—to substantiate the supposed factual bases Plaintiffs cite in support of substitution. *See Park v. CAS Enters., Inc.*, 2009 WL 4057888, at *2 (S.D. Cal. Nov. 19, 2009) (ordering withdrawing expert to submit to "limited [deposition] regarding his [ability to] continu[e] serv[ing] as an expert").

Cooley LLP
Attorneys at Law
San Diego

2

Opposition to *Ex Parte* Motion for
Leave to Substitute Expert Witness
Case No. 3: 21-cv-00762-WQH-MSB

interpreted certain FDA communications to Acadia in 2017 to 2020 as having imposed an *implicit* "requirement" for approval never articulated in any of the communications he referenced; and (2) purported to estimate the *precise numerical probability* of Acadia's sNDA being approved by FDA on specific dates before and during the Class Period. (*Id.* ¶ 5.) Dr. Feigal worked at FDA in a variety of roles over his 12-year tenure, but spent no time in the Division of Psychiatry (the division at issue) and has no training or experience with psychiatric drugs like pimavanserin (the drug at issue). (*Id.* ¶ 4.) He left FDA in 2004, 13 years before the Acadia-FDA interactions at issue in this case. (*Id.*) Since 2010, he has been a consultant and an expert witness with NDA Partners LLC.[3] (*Id.*) And from 2020–2024 alone, he testified as an expert witness in more than 35 different cases. (*Id.*)

In late March, Defendants submitted rebuttal reports from five expert witnesses: (i) Kenneth M. Lehn, Ph.D. (loss causation and damages); (ii) Robert D. Gibbons, Ph.D. (biostatistics); (iii) Anton P. Porsteinsson, M.D. (clinical); (iv) Paul Andreason, M.D., (regulatory); and (v) Christopher D. Breder, M.D., Ph.D. (probability estimates). (*See id.* ¶¶ 6–7 & App'x A.) Two of Defendants' rebuttal experts responded exclusively to Dr. Feigal's opinions. (*Id.* ¶ 8.) *First*, Dr. Andreason—who worked much more recently at FDA and in the Division of Psychiatry—highlighted Dr. Feigal's lack of relevant FDA experience, his apparent unfamiliarity with applicable FDA guidance, and his failure to consider key interactions between FDA and Acadia. *Second*, Dr. Breder also worked at FDA more recently than Dr. Feigal, but as an experienced practitioner of "Probability of Technical and Regulatory Success" analysis, focused his Report on Dr. Feigal's deficient probability estimates. Among other critiques, Dr. Breder noted that Dr. Feigal's citations do not support his estimates. And, Dr. Feigal identified *no methodology* to derive single-point numerical probabilities of FDA approval from his

---

[3] Dr. Feigal's LinkedIn profile states that he departed NDA Partners in December 2024, but the CV appended to his February 2025 report states that he has been employed there "2010 to present." (*Compare* Durbin Decl. ¶ 4 *with* Ex. 6.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

(misguided) interpretations of FDA communications.[4] (*See id.* ¶ 8.)

On May 1, Plaintiffs served reply reports on behalf of their experts. ***Remarkably, Dr. Feigal was the <u>only</u> expert on Plaintiffs' side who offered <u>no</u> response to Defendants' rebuttal experts—four of whom had directly critiqued Dr. Feigal's opinions***. (*Id.* ¶ 9.) In other words, Plaintiffs' only regulatory expert had no response—nothing to say whatsoever—to Defendants' experts, most notably Drs. Andreason and Breder, who had identified numerous defects in his opening report.

The absence of a reply report from Dr. Feigal was not the only unusual development. The parties immediately started negotiating the timing of nine expert depositions, all of which had to take place within only six weeks (May 1 to June 13, 2025). Plaintiffs insisted that Dr. Feigal was unavailable prior to June 8, seemingly due to travel. (*See* Durbin Decl. ¶ 10 & Ex. 1.) The parties ultimately agreed to hold his deposition on June 20, 2025—a week after the close of expert discovery. (*See id.* ¶ 11.) The deposition was to be held at Cooley LLP's Santa Monica office, less than an hour's drive from Dr. Feigal's residence in Santa Rosa Valley. (*See id.* )

On June 17, 2025, four days after the close of expert discovery, Defendants first learned of Dr. Feigal's supposed inability to continue serving as an expert in this case. (*See id.* ¶ 13 & Ex. 2.) During a telephone call that morning, Plaintiffs' counsel stated that Dr. Feigal had informed her the day prior that he was "unplugging" and would be incommunicado due to recent events in Los Angeles. (*Id.* ¶ 14.) Plaintiffs' counsel further stated that Dr. Feigal would not appear for his deposition and would have no further role in the case. (*Id.*) Plaintiffs filed their Motion later that day. (*Id.*)

On June 18, 2025, the Court set a hearing on the Motion and directed Plaintiffs to present their correspondence with Dr. Feigal for *in camera* review, and also to "provide a legal basis for why opposing counsel should not be privy to such communications." (Dkt. 180.) Plaintiffs submitted a letter on Friday, June 20th,

---

[4] The rebuttal reports Drs. Gibbons and Lehn also responded to certain opinions set forth in Dr. Feigal's Report. (*See* Durbin Decl. ¶¶ 8–9 & App'x A.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

asserting that the "legal basis" for their refusal to disclose the correspondence to Defendants "is found in Rule 26(b)(4)(C) which protects 'communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B)[.]'" Defendants responded by email that evening, disputing Plaintiff's position. (*See* Durbin Decl. ¶¶ 16–17 & Exs. 3–4.)

## III.    LEGAL STANDARD

Requests to substitute an expert after the designation deadline has passed are considered according to Rule 16(b)'s "good cause" standard. *See Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015). This is a fact-intensive inquiry that looks not only at "the moving party's reasons for seeking the modification," but also at the "existence or degree of prejudice to the [opposing] party." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

## IV.    ARGUMENT

The Court should deny Plaintiffs' motion for two reasons: (A) Plaintiffs do not provide satisfactory "***reasons*** for seeking modification"—that is, they fail to explain why Dr. Feigal is *unable* (as opposed to merely *unwilling*) to continue serving as an expert; and (B) allowing substitution would cause substantial prejudice to Defendants by unwinding months (and millions of dollars' worth) of expert discovery, scuttling the current case schedule, and conferring windfall strategic advantages on Plaintiffs and their yet-to-be-named replacement expert.

### A.    Plaintiffs' Proffered Reasons for Substitution Are Insufficient.

At the heart of the good-cause inquiry are "the moving party's reasons for seeking modification." *Updike v. Am. Honda Motor Co.*, 2024 WL 4465684, at *2 (D. Ariz. Oct. 10, 2024). Here, Plaintiffs have failed to even articulate, much less substantiate, a satisfactory explanation for Dr. Feigal's claimed unavailability.

First, Plaintiffs' "reasons" for substitution are vague and unsupported by any

actual evidence—most notably anything from Dr. Feigal.[5] Indeed, Plaintiffs' Motion conspicuously offers more unanswered questions than "reasons" for substitution:

- What "situation" and "events" are Dr. Feigal and Plaintiffs referring to? If to the recent immigration-related protests in downtown Los Angeles,[6] how have those events affected Dr. Feigal, who resides 50 miles away?

- What does it mean that Dr. Feigal has "unplugg[ed]"? Has he entirely withdrawn from society, or is he simply unwilling to communicate with Plaintiffs' counsel?[7]

- When did Plaintiffs first realize that Dr. Feigal might not be willing to continue serving as an expert witness?

- When might Dr. Feigal "be willing to be deposed," and under which "limited circumstances"? (Dkt. 179-2 ¶ 13.) And how would those circumstances render his testimony "impossible?" (*Id.*)

At best, the circumstances surrounding Dr. Feigal's unavailability (and Plaintiffs' request for substitution) are dubious. They suggest that Plaintiffs' complications with Dr. Feigal may have been ongoing for longer than disclosed.[8] And they "cast[] doubt on the genuineness of the argument [Plaintiffs] advance[d] to support [their] substitution request." *See Fidelity*, 308 F.R.D. at 655 ("timing" of substitution request rendered proffered reasons "suspect").

Second, Dr. Feigal is not ***unavailable***; he is simply ***unwilling*** to provide sworn testimony supporting his expert opinions.[9] As explained in *Updike*, a mere

---

[5] On June 20, 2025, Plaintiffs submitted for *in camera* inspection an email chain with Dr. Feigal. (Durbin Decl., Ex. 3.) As explained in Defendants' email to the Court, (Durbin Decl., Ex. 4), however, communications between Plaintiffs' counsel and Dr. Feigal concerning his unavailability or unwillingness to continue serving as an expert have been put directly at issue *by Plaintiffs*, and therefore should be produced to Defendants. *See Apple Inc. v. Samsung Elecs.*, 306 F.R.D 234, 241 (N.D. Cal. 2015).

[6] *See* ABC7, "Crowds Clash with Federal Agents After Dozens Detained in ICE Raids Across LA" (June 6, 2025), https://abc7.com/post/multiple-people-detained-ice-homeland-security-agents-conduct-2-separate-investigations-la/16678559/.

[7] Dr. Feigal was recently re-elected to the board of a public company, further calling into question his unavailability due to "unplugging." (Durbin Decl., Ex. 5.)

[8] The Court should also require Plaintiffs to submit for *in camera* review their communications with Dr. Feigal concerning the decision not to serve a reply report, to assess whether and to what the extent Plaintiffs' issues with Dr. Feigal date back further than disclosed in the Motion.

[9] Plaintiffs concede that Dr. Feigal is *capable* of testifying. (Dkt. 179-2 ¶ 13.)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

*unwillingness* is not sufficient grounds for substitution. In that case, the defendant sought to substitute out an expert who "ha[d] retired and closed down his consulting business," leaving him without "an office or support staff to assist with trial preparation." 2024 WL 4465684 at *1. The court rejected this justification, holding that the expert—who was "highly experienced," and likely aware of testimonial requirements—was "not 'unavailable'" so as to justify substitution. *Id*. at *3–4.[10] The same is true here. Dr. Feigal is highly experienced, well aware of his testimonial requirements, and not suffering from some emergent medical condition. Rather, he apparently just prefers now not to provide sworn testimony. But that is not grounds to allow late substitution and reopen discovery. *See Crandall v. Hartford*, 2012 WL 6086598, at *3 (D. Idaho Dec. 6, 2012) ("A party's dissatisfaction with their expert's opinions and/or an expert's lack of regular and timely communication . . . cannot serve to re-calibrate the litigation (at the Court's and Defendant's expense).").[11]

Other courts, including in this district, have concluded that late substitution is inappropriate under similar circumstances. *Morales* is instructive. There, as here, (A) the court was confronted with a motion to substitute well past the deadline for

---

[10] *Accord Hopkins v. Inegon Gen. Ins. Corp.*, 2023 WL 2711664, at *2 (W.D. Wash. Mar. 30, 2023) (denying substitution based on retiring expert's "preference, not on his inability to testify"); *Commonwealth Sci. & Indust. Rsch. Organisation v. Buffalo Tech. (USA)*, 2009 WL 260953, at *1–2 (E.D. Tex. Feb. 3, 2009) (absent "evidence that [expert was] unable to testify due to a diagnosed medical condition," that he "d[id] not want to testify . . . and want[ed] only to be minimally involved" insufficient).

[11] Plaintiffs assert that "courts routinely grant similar motions to substitute a new expert and have found 'good cause' to exist when a party's expert is unwilling to testify at trial or is uncooperative." (Dkt. 179-1 at 6.) Not so. Such motions are usually granted only in the case of some emergent medical condition, an irreconcilable conflict between the expert and the party that retained them, or other factors **not present here**. *See United States v. J-M Mfg. Co.*, 2018 WL 11349905, at *1 (C.D. Cal. Apr. 23, 2018) (disagreement over expert's payment); *Welles v. Turner Entm't Co.*, 2009 WL 10672516, at *1 (C.D. Cal. Aug. 13, 2009) (expert took "mind-altering drugs before his deposition"); *Jung v. Neschis*, 2007 WL 5256966, at *3–4 (S.D.N.Y. Oct. 23, 2007) (expert diagnosed with Alzheimer's); *Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, 2006 WL 3836137, at *2–3 (D. Minn. Dec. 22, 2006) (expert experiencing worsening health problems and mounting "personal tragedies"); *Est. of Clifford v. Placer Cnty.*, 2018 WL 746475, at *1–3 (E.D. Cal. Feb. 6, 2018) ("acrimony" between expert and client); *Pierce v. Fremar, LLC*, 2010 WL 5172883, at *1–3 (D. S.D. Dec. 14, 2010) (conflict of interest).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7

OPPOSITION TO *EX PARTE* MOTION FOR
LEAVE TO SUBSTITUTE EXPERT WITNESS
CASE NO. 3: 21-CV-00762-WQH-MSB

designations and after all other expert discovery had been completed; (B) the discovery deadlines had already been extended to accommodate the expert in question; and (C) "[t]he timing and circumstances of [the expert's] 'withdrawal' [we]re cause for concern." *Morales*, 2016 WL 3763070, at *1. Judge Demblin denied the motion, holding that the expert's "unsupported assertion of 'pressing time commitments' d[id] not render her 'unavailable' within the meaning of the law such that she must be replaced." *Id*. at *2. The weight of in-circuit authority is in accord.[12]

### B.    Permitting Substitution Would Unfairly Prejudice Defendants.

The extreme prejudice to Defendants from allowing Plaintiffs a "do-over" by replacing Dr. Feigal with a new expert "suppl[ies] additional reasons to deny [Plaintiff's] motion." *Johnson*, 975 F.2d at 609. Defendants' regulatory experts, Drs. Andreason and Breder, each prepared rebuttal reports devoted to responding to separate opinions in Dr. Feigal's report. Drs. Gibbons and Lehn also prepared rebuttal reports addressing subsets of Dr. Feigal's opinions. (*See* Durbin Decl. ¶ 8 .) To state the obvious, Defendants' experts prepared reports and testified at deposition to rebut the opinions offered ***by Dr. Feigal in his report***. Expert discovery is now closed, and Defendants have incurred millions of dollars in associated expert, consultant, and attorney's fees. For months now, Defendants have been preparing their *Daubert* and summary judgment motions, which are due on August 1, 2025. (*See id.* ¶¶ 18–19.)

All of this work, along with the current case schedule, will be for naught if Plaintiffs are permitted to replace Dr. Feigal now with a new expert and a new report.[13] Beyond that, a replacement expert would have the substantial advantage of

---

[12] *See Hopkins*, 2023 WL 2711664, at *2 (denying substitution based on expert's "preference, not on his inability to testify"); *Updike*, 2024 WL 4465684, at *3; *Crandall*, 2012 6086598, at *3 ("If a party's relationship with an expert becomes difficult, and leads to some regret that someone else had not been hired instead, that is a problem of the party's own making, and not a proper basis to further delay the case.").

[13] Plaintiffs' suggestion that the August 1, 2025 deadline for summary judgment and *Daubert* motions would not be "materially impair[ed]" by the requested substitution, (Dkt. 179-1 at 8), is absurd. Plaintiffs have not even identified a suitable replacement

crafting their opinions to mitigate the defense experts' critiques of Dr. Feigal. Given this manifest unfairness, expert discovery would likely need to be reopened more broadly, to allow Defendants' experts to respond to any new or different analysis appearing in the substitute expert's report. *See Morales*, 2016 WL 3763070, at *2 ("[T]he new [expert's] report will be made with the benefit of reviewing the reports of Defendants' experts and may necessitate new rebuttal reports and another round of depositions, . . . impact[ing] the Court's scheduling of this case"). Defendants would presumably also need an opportunity to re-examine Plaintiffs' damages expert, Dr. Feinstein, who relies on Dr. Feigal's "probability of success" opinions to support his own damages model. (*See* Durbin Decl. ¶ 12.) Prejudice on this scale requires that Plaintiffs' Motion be denied—parties are not permitted to simply "'reset' the litigation by substituting a new expert." *Fidelity*, 308 F.R.D. at 655 n.3.

## C. Dr. Feigal Should Be Compelled To Testify.

If Dr. Feigal is, in fact, simply unwilling to testify voluntarily and Plaintiffs believe his "expert testimony is necessary for [them] to 'fairly present'" their case, then the appropriate course is to subpoena his testimony at deposition and, if necessary, at trial. *Updike*, 2024 WL 4465684, at *4; *see also Morales*, 2016 WL 3763070, at *2; *Hopkins*, 2023 WL 2711664, at *2.

## V. CONCLUSION

For these reasons, Defendants request that the Court deny Plaintiffs' Motion.

---

to take Dr. Feigal's place, much less explained how they intend to complete the additional discovery required in time to maintain the current schedule.

Dated: June 23, 2025

COOLEY LLP


By: */s/ Koji F. Fukumura*
    Koji F. Fukumura

Attorneys for Defendants
Acadia Pharmaceuticals Inc., Stephen R. Davis, and Srdjan (Serge) R. Stankovic