COOLEY LLP
MICHAEL A. ATTANASIO (151529)
(mattanasio@cooley.com)
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
PETER M. ADAMS (243926)
(padams@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
10265 Science Center Drive
San Diego, California 92121
Telephone:   (858) 550 6000
Facsimile:   (858) 550 6420

CHRISTOPHER B. DURBIN (218611)
(cdurbin@cooley.com)
1700 Seventh Avenue, Suite 1900
Seattle, Washington 98101
Telephone:   (206) 452 8700
Facsimile:   (206) 452 8800

Attorneys for Defendants
Acadia Pharmaceuticals Inc., Stephen R. Davis,
and Ana Stankovic, as Special Personal
Representative of the Estate of Srdjan (Serge)
R. Stankovic

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BIRMINGHAM RELIEF AND RETIREMENT SYSTEM AND OHIO CARPENTERS' PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACADIA PHARMACEUTICALS INC., STEPHEN R. DAVIS, and ANA STANKOVIC, as Special Personal Representative of the Estate of Srdjan (Serge) R. Stankovic,<br><br>Defendants. | Case No. 3:21-CV-00762-WQH-MSB<br><br>CLASS ACTION<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT TESTIMONY (ECF NO. 198)**<br><br>Judge:      Hon. William Q. Hayes |

**DEFENDANTS' SUPPLEMENTAL BRIEF**
**Case No. 3:21-CV-00762-WQH-MSB**

Defendants submit this supplemental brief explaining why Judge Komitee's analysis of Dr. Feinstein's methodological errors in *In re Vale S.A. Securities Litigation*, 19-CV-526 (EK)(VMS), 2026 WL 1002335 (E.D.N.Y. Apr. 13, 2026), warrants exclusion of Dr. Feinstein's similar damages opinions in this case. In both cases, Dr. Feinstein calculated artificial inflation (stemming from alleged misstatements concerning the risk of an adverse event) based on an unsupported assumption that investors with truthful information would have assumed the certainty of that adverse event, and without any attempt to disaggregate the effect of other information.

In *Vale*, Dr. Feinstein concluded that "Vale's alleged misrepresentations about dam safety had the effect of inflating Vale's equity by the full amount—100%—of the losses that emerged after the . . . dam collapse," all of which were recoverable as damages. *Id.* at *3. This conclusion rested on Dr. Feinstein's assumption that investors in the but-for world of full disclosure "would have 'rationally assume[d] the worst,' i.e. that a dam collapse would definitely occur." *Id.* at *2. Judge Komitee excluded Dr. Feinstein's damages opinions because this "assertion that investors would have fixed the probability of a collapse at 100% st[ood] on nothing but his own *ipse dixit*." *Id*. at *5. And, as noted by the court, this flawed assumption led Dr. Feinstein to conduct the wrong analysis:

> Assume, for example, that a reasonable investor, possessed of all relevant (and true) facts, would have estimated the risk of a dam collapse at 60%. Assume further that she estimated a 20% risk because of the company's misrepresentations. The appropriate measure of damages attributable to the misrepresentations would be the difference in investors' cash flow expectations from the 40% delta in the perceived risk of a dam collapse, not the price decline when the risk materializes . . . Dr. Feinstein has offered no reason based in economics to think otherwise, and the Court is aware of none.

*Id*. In addition, the risk of dam collapse was *always a known risk* (even if the defendants allegedly had misrepresented the *extent* of that risk), which Dr. Feinstein simply ignored. *Id*. at *7 ("plaintiff does not seriously contend that class members assumed no

risk of a dam collapse"). As a result, his damages model failed to disaggregate the "non-fraud-related loss component" attributable to this known risk. *Id*.; *see also id.* at \*5 (recognizing that Dr. Feinstein's damages model failed to "disaggregate the investment losses caused by Vale's alleged misrepresentations—i.e., the ostensible understatement of the risk—from the losses caused by the actual dam collapse").

In this case, Dr. Feinstein said he would calculate damages by computing "the difference between the market's *perceived* and *true* likelihood of approval—or PoS—of Acadia's sNDA," and by measuring the impact of that delta on Acadia's stock price. Dkt. 198-1 at 19. He attempts (albeit unreliably) to do that at the start of the Class Period (as of September 9, 2019). ***But Dr. Feinstein completely abandons this (flawed) approach as of December 5, 2019***. On that date, he concludes that ***100% of the front end price increases*** (i.e., the ***entire, combined*** stock price increase from <u>both</u> dates, totaling $22.43) becomes artificial inflation, which then persists and remains constant[1] until the first corrective disclosure.[2] *Id.* at 20–23. And he asserts that, in the but-for world of full disclosure, "any substantial hope for a near-term FDA approval based on completed studies would have been all but dashed." *Id.* at 22 (quoting Ex. 12 ¶ 39; *see also* ¶ 280 (the market would have known that ***all*** prior increased optimism and stock price gains were "unwarranted") and ¶ 300 ("***the CRL-related disclosure provided***

---

[1] *Vale* rejected Dr. Feinstein's constant inflation model because he failed to analyze whether the actual risk of a dam collapse changed during the class period. 2026 WL 1002335, at \*7. The same is true here, where Dr. Feinstein ignores: (1) that Dr. Peck opines that but-for/true PoS ***did*** change throughout the class period (Dkt. 198-5 at 94–98), and (2) the impact on perceived and but-for PoS from the FDA agreeing to file the sNDA ***with no review issues*** in July 2020, which would have decreased artificial inflation (Dkt. 198-1 at 38 fn. 23; Dkt. 210 at 13 fn.15).

[2] That Dr. Feinstein measured artificial inflation on the front end here (as opposed to on the back end in *Vale*) is a distinction without a difference. Here, he still assumed the worst and labeled 100% of the front-end price increases as artificial inflation. On the back end, he just subtracts the $22.43 of front-end artificial inflation from the stock price drops. He claims the leftover $1.77 ***might*** be due to the elimination of optimism not caused by the alleged misstatements. *See* Dkt. 198-1 at 23–24. But this is just arithmetic. *See* Dkt. 198-1 at 23; Dkt. 198-24 at 248:16-24. It is ***not*** the result of a calculation of the difference in investors' expectations from the delta in actual PoS (based on misrepresentations) versus but-for PoS (possessed of all true information).

*virtually the same information to the market that adequate and honest disclosure would have provided previously in a but-for scenario*.")).

This opinion suffers from precisely the same methodological defects as in *Vale*. Here, Dr. Feinstein assumes that, in the but-for world, investors would have expected the absolute worst. In other words, as of December 5, 2019, they would have known that the FDA would issue the CRL. That assumption is unsupported and, as in *Vale*, it is based on nothing but Dr. Feinstein's own *ipse dixit*. Indeed, given the undefined nature of "directional consistency," the inherently subjective process of evaluating clinical trial data, and contemporaneous analyst statements, there is no basis whatsoever to assume that, if Acadia investors had known "the truth," they would have assumed with 100% certainty the FDA would reject the sNDA. Dkt. 198-1 at 36–41; Dkt. 210 at 12–14.[3]

Additionally, as in *Vale*, Dr. Feinstein "has done nothing to prove whether, and to what extent, Plaintiffs' losses were, in fact, caused by the materialization of ***unknown*** risks (*e.g.*, Plaintiffs' alleged risk of FDA rejection based on Harmony's alleged failure to achieve the so-called directional consistency requirement) instead of the materialization of ***known*** risks (*e.g.*, the risk of FDA rejection because FDA changed its mind about Harmony or was simply not convinced by Acadia's submission)." Dkt. 198-1 at 28; Dkt. 210 at 5–7. As in *Vale*, his flawed assumption results in his failure to disaggregate from his damages calculations the "non-fraud-related loss component" attributable to the ***known*** risk that the sNDA might be rejected. 2026 WL 1002335, at *7.

Dr. Feinstein's damages opinions suffer from the same fundamental defects at issue in *Vale*. They are unsupported, illogical, and should be excluded.

---

[3] Plaintiffs may argue that, as of December 5, Dr. Feinstein did not assume a but-for PoS of 0%, but instead assumed a but-for PoS roughly equivalent to what existed before the Class Period began (PoS of 40–50%). This is a red herring because it ignores Dr. Feinstein's plain language and his decision to label ***all*** of the front-end stock price increases as "artificial" inflation.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3

**DEFENDANTS' SUPPLEMENTAL BRIEF**
**Case No. 3:21-CV-00762-WQH-MSB**

Dated: May 1, 2026

COOLEY LLP

By: /s/ Koji F. Fukumura
Koji F. Fukumura

*Attorneys for Defendants Acadia Pharmaceuticals Inc., Stephen R. Davis, and Ana Stankovic, as Special Personal Representative of the Estate of Srdjan (Serge) R. Stankovic*